STATE OF CONNECTICUT *v.* ANDREW JOHNS

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued April 8—decision released June 9, 1981

---

*Donald D. Dakers,* assistant public defender, for the appellant (defendant).

*John H. Durham,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. In a case tried to the jury, the defendant was found guilty of both counts in the first part of a two part information. The first count charged the crime of burglary in the third degree, in violation of General Statutes § 53a-103 (a),[1] and the second count charged the crime of conspiracy, in violation of General Statutes § 53a-48.[2] The second part of the information, to which part he pleaded guilty, charged him with being a persistent felony offender. See General Statutes § 53a-40 (b). He was sentenced as a persistent felony offender, and received a term of not less than five years and not more than ten years on the first count, and a term of not less than two and one-half years and not more than five years on the second count. The court ordered the sentences to

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes § 53a-48 provides in part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

run consecutively, so that the total effective sentence imposed was imprisonment for not less than seven and one-half years and not more than fifteen years.[3] This appeal followed.

The jury could have reasonably found the following facts: At approximately 12:15 p.m. on July 27, 1978, the desk officer at the Connecticut state police barracks in Bethany received a telephone alarm call that a burglary was in progress at the Benedict residence on route 69 in Bethany. Upon their arrival at the residence, the police officers noticed a tan station wagon parked in the driveway. No one was in the station wagon or in front of the residence, and there was no movement inside the home. In checking the rear of the house, the officers observed that a forced entry had been made into the residence. The officers heard people running through the very dense woods and brush behind the house. One of the officers gave chase, and saw three white males running ahead of him. Although the officer pursued them in a southerly direction for twenty minutes, he was unsuccessful in capturing them.

Meanwhile, it was discovered that the Benedict residence had been ransacked. The parked station wagon, which had a rear license plate but none in the front,[4] proved to be a stolen vehicle. The police found a pizza box, with a warm pizza, in the station wagon. Two latent fingerprints lifted from this vehicle proved to be those of the defendant.

---

[3] The total effective sentence actually imposed was a result of an "agreed recommendation." The sentencing transcript indicates that at the time of sentencing, the state, as it represented to the court it had so agreed with the defendant, entered nolles on eight files pending against the defendant.

[4] Prior to July, 1980, our statutes required the display of two number plates on most motor vehicles. Compare General Statutes (Rev. to 1979) § 14-18 (a) with General Statutes (Rev. to 1981) § 14-18 (a). See also General Statutes (Rev. to 1981) § 14-21b (b).

The investigating officers at the scene had called for the assistance of bloodhounds and their handlers. Beginning behind the Benedict residence, the tracking dogs followed trails in a southerly direction to the intersection of Cozley Road, route 69 and Carrington Road, where heavy vehicular traffic forced an end to the tracking.

Further investigation revealed that shortly after the burglary had occurred, Lance Blomberg and Robert Gambordella, who were riding dirt bikes near the Blomberg home, saw three individuals walking up Carrington Road toward the Blomberg residence. All three, who were wet and perspiring, and who looked suspicious to Blomberg, went to the Blomberg home. When Blomberg and Gambordella went to check on them, they said that their car had run out of gas and that they needed a ride to New Haven.[5] John Ciesluk, a boarder at the Blomberg residence, gave the three a ride to New Haven, dropping them off on Valley Street, in the vicinity of East Ramsdell Street and Victory Drive. Thereafter, the three went to the home of the defendant's brother-in-law, Albert Dacato, which was located a short distance from where Ciesluk had dropped them off. Dacato observed that the three men, who were identified as the defendant, Robert Mazzacane and Michael Marple, were wet. Mazzacane was all dirty and Marple was all scratched up.

Subsequent investigation disclosed that shortly before the burglary at the Benedict residence, the defendant and his companions had purchased a pizza at a restaurant on route 69 in Prospect. An employee of the restaurant identified the defendant and recalled that the car that the defendant and his

---

[5] At the trial, Blomberg positively identified the defendant as one of the three individuals looking for a ride.

two companions were driving did not have a front license plate. Finally, evidence revealed that after leaving the restaurant and heading toward New Haven, the defendant and his two companions, prior to the burglary of the Benedict home, stopped at two other houses on route 69. At both houses, people were then at home.

The defendant poses the issue to be decided on this appeal as follows: Does the imposition of a sentence on the second count of the information, charging conspiracy to commit burglary, consecutive to the sentence on the first count, charging the substantive offense of burglary as a separate crime, violate his rights against double jeopardy under the fifth amendment to the United States constitution and the laws of Connecticut,[6] when his liability on the burglary count was dependent upon his conviction under that count as an accessory under General Statutes § 53a-8?[7] We hold that it does not.

[6] In *State* v. *Langley,* 156 Conn. 598, 600–601, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969), we said: "The constitution of Connecticut has never contained a provision against double jeopardy such as that found in article five of the amendments to the constitution of the United States. Conn. Const. 1965, art. I; *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 [1962]; *State* v. *Palko,* 122 Conn. 529, 538, 191 A. 320 [1937]; *State* v. *Muolo,* 118 Conn. 373, 381, 172 A. 875 [1934]. Nevertheless, this court has long recognized as a fundamental principle of common law that no one shall be put in jeopardy more than once for the same offense. *State* v. *Woodruff,* 2 Day 504, 507 [1807]; *State* v. *Benham,* 7 Conn. 414, 418 [1829]; *State* v. *Garvey,* 42 Conn. 232, 233 [1875]."

[7] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

The court charged the jury on this statute. The fact, of course, that the defendant was not formally charged as an accessory under

In making this claim, the defendant "readily concedes" that "in the usual case," neither federal nor state double jeopardy restraints bar prosecution for both conspiracy to commit a substantive offense and the substantive offense itself, and that, in most cases, separate sentences can constitutionally be imposed upon conviction. See *Iannelli* v. *United States,* 420 U.S. 770, 779–80, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975); *Pinkerton* v. *United States,* 328 U.S. 640, 643, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946); *State* v. *Acklin,* 171 Conn. 105, 116, 368 A.2d 212 (1976). He argues, however, that based on double jeopardy considerations, exceptions exist to this general rule which apply not only to multiple prosecutions but also to multiple punishments for the "same offense." See, e.g., *Brown* v. *Ohio,* 432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *State* v. *Goldson,* 178 Conn. 422, 423 A.2d 114 (1979).

In arguing for a reversal, he maintains that the parameters of what constitutes the "same offense" laid down by *Blockburger* have been broadened by *Brown* v. *Ohio,* supra, and our decision in *State* v. *Goldson,* supra. He claims that the test now appears to be "to consider whether the crimes are substantially similar and arose out of the 'same act or transaction' and whether the 'same evidence' would be required for the proof of both crimes." He then reasons thus: Liability for the underlying substantive crime as an accessory under § 53a-8 requires that the accessory share the same illegal intent as the principal actor. Therefore, an agreement among

General Statutes § 53a-8 does not preclude his being so convicted. See *State* v. *Ferrara,* 176 Conn. 508, 512–13, 408 A.2d 265 (1979); *State* v. *Ives,* 172 Conn. 322, 323, 374 A.2d 244 (1977).

two or more wrongdoers is required to impose criminal liability under both statutes. The "elemental difference" for the imposition of criminal liability as an accessory under § 53a-8 and the crime of conspiracy, he says, is that the "overt act" in a conspiracy prosecution "may be an inchoate crime" whereas the imposition of criminal liability for the underlying substantive crime as an accessory under § 53a-8 requires a completed crime. Such an "elemental difference" under the facts of this case, he concludes, referring to our decision in *State* v. *Goldson,* supra, is a constitutionally prohibited prosecution for two separate crimes "addressing only different temporal aspects of the same conduct." We must reject these claims in this case.

The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." In *Blockburger,* a case involving multiple counts in one trial, the United States Supreme Court stated the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment. In that case, the court held that, "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States,* supra, 304.[8] See *Albernaz* v. *United States,*

---

[8] In *Whalen* v. *United States,* 445 U.S. 684, 691, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980), the United States Supreme Court said that the clause in *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which says " 'requires proof of a fact which the other does not . . .' refers, of course, to a rule of statutory construction stated by this Court in *Blockburger* . . . and consistently

450 U.S. 333, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981); *Whalen* v. *United States,* 445 U.S. 684, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980). While we recognize that *Blockburger* may not be without exception, such circumstances are not present here.

The defendant refers to *Brown* v. *Ohio,* supra, which, unlike the matter before us, involved a double jeopardy claim in the context of multiple prosecutions and not the imposition of consecutive sentences in a single prosecution.[9] *Brown* explicitly recognizes that the "established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockurger,*" and that "[t]his test emphasizes the elements of the two crimes." *Brown* v. *Ohio,* supra, 166; see also *State* v. *Goldson,* supra. In *Brown* the court reiterated that "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown* v. *Ohio,* supra, 165; see also *Albernaz* v. *United States,* supra, 344. This is a logical corollary of the proposition that legislatures

relied on ever since to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively."

[9] In *Brown* v. *Ohio,* 432 U.S. 161, 166 n.6, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977), the United States Supreme Court noted that "[t]he *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." It then went on to illustrate that proposition, discussing *Ashe* v. *Swenson,* 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), and *In re Nielsen,* 131 U.S. 176, 9 S. Ct. 672, 33 L. Ed. 118 (1889).

remain free under the double jeopardy clause to define crimes and fix punishments; but once they have acted, courts may not impose more than one punishment for the same offense. See *Brown* v. *Ohio,* supra. Our legislature has defined separately the crimes of burglary in the third degree; General Statutes § 53a-103; conspiracy; General Statutes § 53a-48; and accessory; General Statutes § 53a-8; and has fixed punishments for each of them. See General Statutes §§ 53a-103 (b), 53a-51, and 53a-8.

We turn to the defendant's claim that his double jeopardy rights were violated by the consecutive sentencing because he was found guilty as an accessory to the substantive crime of burglary in the third degree. Although the defendant's claim is premised on the contention that he was found guilty as an accessory, and not as a principal, there is nothing in the record before us to show that he was in fact found guilty as an accessory.[10] If we assume,

---

[10] Because no interrogatories were presented to the jury, we do not know in fact whether the jury found the defendant guilty as an accessory or as a principal. Although the defendant has not fully briefed this issue, it appears from a reading of the record and briefs that the defendant's claim that he was found guilty as an accessory may have merit. The state points to certain evidence from which it contends the jury "could easily and quite reasonably have inferred and concluded" that "the defendant had been in the house and had actively participated in the illegal act of entering the home," i.e., that he acted as a principal. This evidence included the following:

"1. The State Police received the alarm as the Benedict residence was being burglarized;

2. Officers responded to the scene immediately;

3. When the police arrived, nobody was in the stolen vehicle used by the defendant and his associates, nobody was in the front of the house, nobody was in the garage;

4. Trooper Burban went around to the rear of the residence and she apparently saw nobody on the side of the house, but rather she heard people running in the brush behind the house;

5. Sgt. Hanahan went around to the rear of the house and he saw nobody, but he did hear people running through the brush

however, that he was, his claim is unsound under *Blockburger* and its progeny.

"To establish the crime of conspiracy under § 53a-48 of the General Statutes, it must be shown that an agreement was made between two or more persons 'to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed.' *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 [1975]. The existence of a formal agreement need not be established; it is sufficient to show that they are 'knowingly engaged in a mutual plan to do a forbidden act.'" *State* v. *Marra,* 174 Conn. 338, 344, 387 A.2d 550 (1978); see *State* v. *Holmes,* 160 Conn. 140, 149, 274 A.2d 153 (1970).

To support a conviction under the accessory statute, § 53a-8, it is necessary for the state to show that "[a] person, acting with the mental state required for commission of an offense . . . solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense . . . ." Such a person is "criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." Ibid.

It is evident that the statutory framework for each offense, i.e., the crime of accessory to burglary

behind the Benedict home, and upon giving chase did note the fleeing persons were three white males;

6. Illegal entry had been gained through a rear door to the house; and

7. The ransacking of the Benedict home was extensive." We do not agree with the state that from this evidence the jury could have "easily inferred" that the defendant was guilty as a principal.

in the third degree and conspiracy to commit burglary in the third degree, "requires proof of a fact which the other does not." See *Brown* v. *Ohio, supra,* 168; *Blockburger* v. *United States, supra.* The elements of these crimes are different. The essence of the conspiracy charge is the illegal agreement; its proof is necessary to make out a conspiracy. *Iannelli* v. *United States, supra,* 778; *Pereira* v. *United States,* 347 U.S. 1, 11, 74 S. Ct. 358, 98 L. Ed. 435 (1953); *United States* v. *Cruz,* 568 F.2d 781, 782–83 (1st Cir. 1978), cert. denied, 444 U.S. 898, 100 S. Ct. 205, 62 L. Ed. 2d 133 (1979). Proof of such an agreement is not necessary to prove the defendant guilty as an accessory to burglary in the third degree; see *Iannelli* v. *United States, supra,* 777 n.10; whereas proof of the actual commission of the substantive crime of burglary, either by one as an accessory or as a principal, is unnecessary to make out a conspiracy. The underlying substantive offense, whether it be regarded as that of accessory or as that of principal to the burglary charge, while it may evince a conspirator's participation in the illegal agreement, does not constitute an element of the conspiracy charge. Thus, the defendant's conviction, either as a principal or as an accessory to burglary, does not turn at all upon the illegal agreement essential to the conspiracy. Analytically, the statutory terms of § 53a-8 of "aiding and abetting," i.e., "solicits, requests, commands, importunes or intentionally aids another person . . ." are not terms which presuppose the existence of an agreement. "Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy." *Pereira* v. *United States, supra,* 11; see *Nye & Nissen* v. *United States,* 336 U.S. 613, 620, 69 S. Ct. 766, 93 L. Ed. 919 (1949).

Clearly, then, the *Blockburger* test has been satisfied. The consecutive sentences in this case were imposed with respect to two separate offenses and did not violate the defendant's double jeopardy rights. There is no merit to the defendant's claim that the consecutive sentences imposed are constitutionally prohibited because the "elemental differences" address "only different temporal aspects of the same conduct." Contrary to the defendant's contentions, here we are not presented with the constitutionally interdicted prosecutorial conduct of adopting "the simple expedient of dividing a single crime into a series of temporal or spatial units." See *Brown* v. *Ohio,* supra, 169.

There is no error.

In this opinion BOGDANSKI, C. J., PARSKEY and ARMENTANO, Js., concurred.

PETERS, J., concurred in the result.