## STATE OF CONNECTICUT *v.* CARL STEVE (13263)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued April 12—decision released June 21, 1988

*Michael A. Fasano,* special assistant state's attorney, with whom were *Peter D. Markle,* former assistant state's attorney, and, on the brief, *John Connelly,* state's attorney, *Bradford J. Ward,* assistant state's attorney, and *Joseph A. Geremia, Jr.,* for the appellant (state).

*Denise Dishongh,* special public defender, with whom was *Louis Avitabile,* special public defender, for the appellee (defendant).

SHEA, J. A jury found the defendant guilty of the crimes of robbery in the first degree, a violation of General Statutes § 53a-134 (a) (2),[1] and assault in the first degree, a violation of General Statutes § 53a-59 (a) (3).[2] On the defendant's appeal from the judgment of con-

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

[2] "[General Statutes] Sec. 53a-59. ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person

viction, the Appellate Court determined that the trial court had erred in instructing the jury on the theory of aiding and abetting pursuant to General Statutes § 53a-8[3] as to both the robbery and assault charges in the substitute information when the state had alleged in its bill of particulars that the defendant was being prosecuted only as a principal on these charges. *State v. Steve*, 11 Conn. App. 699, 529 A.2d 229 (1987). The state, after this court had granted certification, appealed from the Appellate Court's judgment reversing the judgment of the trial court. We conclude, as did the Appellate Court, that the trial court erred in instructing the jury on accessorial liability when the state's bill of particulars, as amplified orally after it had been filed, affirmatively indicated that the defendant was the principal in regard to both charges, and that this error was prejudicial. Accordingly, we affirm the judgment of the Appellate Court.

Although the facts that the jury could reasonably have found are set forth in *State v. Steve*, supra, we summarize those pertinent to the issues in this appeal. The state in a substitute information charged the defendant with the crimes of robbery in the first degree, a violation of § 53a-134 (a) (2), and of assault in the first degree, a violation of § 53a-59 (a) (3). Prior to the trial, the defendant moved for a bill of particulars, requesting that the information state: (1) the specific nature

---

seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

[3] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

of the offense or offenses with which the defendant was charged; (2) the time, place and manner in which the offense was committed; (3) the specific acts performed by the defendant which constitute all necessary elements of the crime charged; (4) the general circumstances surrounding the alleged crime; (5) the date and time of the alleged violation as well as the section of the General Statutes violated; and (6) the name or names and addresses of all persons the state alleges were involved in such violation.

The bill of particulars filed by the state in response to this motion alleged the following: "The defendant, Carl Steve, is charged with the crime of Robbery in the First Degree in violation of Section 53a-134 (a) (2) of the Connecticut General Statutes, in that on or about April 13, 1985, at or near 185 Walnut Street in the city of Waterbury at approximately 4:00 p.m., the defendant, in the course of committing a larceny used physical force upon another person, to wit: Scott Doyle, for the purpose of compelling the owner of such property, Scott Doyle, to deliver up the property and to prevent or overcome resistance to the taking of the property, and the defendant was armed with a deadly weapon. The defendant, Carl Steve, is charged with the crime of Assault in the First Degree in violation of Section 53a-59 (a) (3) of the Connecticut General Statutes, in that on or about April 13, 1985, at or near 185 Walnut Street in the city of Waterbury at approximately 4:00 p.m., the defendant under circumstances evincing an extreme indifference to human life recklessly engaged in conduct which created a risk of death to another person, to wit: Scott Doyle, and thereby caused serious physical injury to Scott Doyle."

After the bill of particulars had been filed, the defendant orally requested that it be clarified with respect to the allegation of reckless conduct relied upon for the charge of assault in the first degree. The state's attor-

ney responded that, if he were ordered to amend the bill of particulars, he would do so by saying that the defendant had "recklessly engaged in conduct, to wit: Possessing a loaded weapon and holding it to the stomach or the person of the victim, Scott Doyle . . . thereby causing physical injury by shooting Scott Doyle." In denying the defendant's motion, the court remarked, "[Y]ou know that the state's allegation is that the conduct which was engaged in . . . creating a risk of death was the use of a handgun . . . [b]ecause, that is pretty much alleged in the first bill of particulars. Whether the state says that or not, that is what is attempted to be proved here, and that is what you have to defend against. . . . So, it does not have to be amended. . . . The record makes it clear what the basis of the charge and bill of particulars is."

After the state had concluded the presentation of evidence in its case-in-chief, the defendant took the stand in his own defense and testified that a second person, Jeff Manson, had actually shot the victim and taken his property and that he, the defendant, had not participated. *State* v. *Steve,* supra, 702. This testimony was corroborated in part by a second witness, who testified that she had seen the defendant and Manson together moments after the incident. She testified that Manson was carrying a handgun and bragging about robbing and shooting a "white dude." She also testified that while Manson was talking, the defendant sat silently and made no comment. A sister of the defendant also testified that she had seen Manson in possession of the gun immediately before and after the shooting. She further testified that she had seen the defendant accompany Manson during this time.

Before closing arguments the state's attorney advised the defendant that he would request a charge on accessorial liability for the offenses. The court initially charged the jury on the elements necessary to

prove the defendant guilty of robbery and assault as a principal but later, in responding to jury requests for further instructions, charged that he would also be guilty of both offenses if he had intentionally aided another for the purpose of committing those crimes. See General Statutes § 53a-8. The defendant excepted to the charge on accessorial liability as an expansion of the bill of particulars. The jury returned a verdict finding the defendant guilty of both the assault and robbery charges. Thereafter, the defendant filed motions for a judgment of acquittal, for a new trial, and in arrest of judgment. In the motion for judgment of acquittal, the defendant claimed that the evidence presented did not permit a finding of guilt beyond a reasonable doubt of the charges contained in the substitute information. The defendant's motions for a new trial and in arrest of judgment maintained that the court's charge had allowed the jury to consider facts and crimes outside the scope of the bill of particulars. Id., 702–703. The court denied the defendant's motions. Id., 703.

I

The only issue presented by this appeal is whether the Appellate Court correctly concluded that the trial court erred in instructing the jury on the theory of accessorial liability when the bill of particulars, as elucidated by the state, alleged that the defendant was the principal in regard to both the robbery and assault charges and that such error was harmful.

The state contends that the substitute information and bill of particulars, when read together, were sufficient to apprise the defendant of the possibility that he might be convicted as an accessory. It notes that "the fact that a defendant was not formally charged as an accessory [in an information or indictment] does not preclude his being so convicted." *State* v. *Crump*, 201 Conn. 489, 493, 512 A.2d 199 (1986). The state

maintains that a defendant who is charged as a principal in a crime is necessarily on notice that he may be convicted as an accessory.

The Appellate Court "acknowledge[d] that a defendant may be convicted on a theory of accessory liability even where he has not been formally charged by information with such." *State* v. *Steve*, supra, 706. It concluded, however, that the bill of particulars under the circumstances of this case limited the state to proving that the defendant committed robbery and assault in substantially the manner described, which referred only to his participation as a principal. Id., 704–705. It determined that "the court's charge to the jury was not in substantial conformity with the facts alleged in the state's bill of particulars," and that this variance prejudiced the defendant in the presentation of his defense. Id., 705.

The purpose of a bill of particulars is to inform the defendant of the charges against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise. *State* v. *Roque*, 190 Conn. 143, 154, 460 A.2d 26 (1983). A bill of particulars limits the state "to proving that the defendant has committed the offense in substantially the manner described."[4]

---

[4] The dissenting opinion concedes that "the state may be limited to proving that the offenses alleged were committed in substantially the manner described in the bill of particulars," but concludes, nevertheless, that no rule of law "requires incriminating evidence from the defendant to be ignored by the state or the trial court." Where the incriminating evidence from the defendant is wholly at variance from the manner in which the bill of particulars specifies the crime to have been committed, as here, we are aware of no case holding that a defendant may be convicted of the crime charged on the basis of that evidence simply because its source was his own testimony or that of his witnesses. The basic principle that the state must prove the crime in the manner alleged in the bill of particulars precludes a conviction based upon evidence that it was committed in a substantially different manner regardless of the source of that evidence. The cases cited in the dissenting opinion in support of its novel thesis, *Johnson* v. *State*, 518 N.E.2d 1073, 1077–78 (Ind. 1988), and *Haskins* v. *State*, 441 N.E.2d

*State* v. *Ruiz,* 171 Conn. 264, 270, 368 A.2d 222 (1976). In *State* v. *Killenger,* 193 Conn. 48, 52–55, 475 A.2d 276 (1984), we held that there was no material variation where the bill of particulars alleged that the accused employed a hammer in committing robbery and assault, but the evidence indicated that a flashlight was used as a weapon. We concluded that the instrument used to bludgeon the victim was of the same generic character as that specified in the bill of particulars, having the "potential character of a dangerous instrument capable of inflicting the same type of wound." Id. It is the defendant's burden on appeal to demonstrate that "he was in fact prejudiced in his defense on the merits" as a result of a material variance between the allegations in a bill of particulars and proof at trial, and that "substantial injustice was done to him because of the language of the state's pleadings." *State* v. *Roque,* supra, 156.

We conclude that the Appellate Court was correct in determining that the defendant was prejudiced in

419, 424–25 (Ind. 1982), do not involve a charging document that has been narrowed in scope by a bill of particulars, but rely upon the well established principle that under an information or indictment alleging the commission of a crime, the scope of which has not been limited by a bill of particulars, the defendant may be convicted as either a principal or an accessory. *State* v. *Crump,* 201 Conn. 489, 493, 512 A.2d 199 (1981); *State* v. *Johns,* 184 Conn. 369, 373–74 n.7, 439 A.2d 1049 (1981). We note that some courts have refused requests for bills of particulars requiring the state to specify whether a defendant is charged as a principal or as an accessory upon the ground that the defendant is not entitled to such a disclosure of the state's theory of the case. *United States* v. *Mannino,* 480 F. Sup. 1182, 1185 (S.D.N.Y. 1979); *State* v. *Willis,* 322 So. 2d 169, 171 (La. 1975). "One of the main policy reasons for restricting [the use of a bill of particulars] is to avoid 'freezing' the Government's evidence in advance of trial. Such freezing comes about because of the rule that requires proof at trial to conform to the particulars furnished in a bill. *United States* v. *Neff,* 212 F.2d 297, 309 (C.A.3. 1954); *United States* v. *Allied Asphalt Paving Co.,* 451 F. Supp. 804, 812 (N.D. Ill. 1978). Thus, the court is required to balance restricting the Government's proof against protecting defendants from surprise." *United States* v. *Boffa,* 513 F. Sup. 444, 485 (D. Del. 1980).

his defense as a result of a substantial variance between the allegations in the bill of particulars and the court's instructions concerning accessorial liability. "It is clear that the presentation of his defense relied upon the state's claim [in its bill of particulars] that the defendant was in fact the principal of each crime." *State* v. *Steve,* supra, 705. It is significant that the state presented no evidence in its case-in-chief suggesting that the defendant had acted as an accomplice. It is probable that the defendant's decision to testify, thus providing the evidence that furnished a basis for finding him guilty as an accomplice, was greatly influenced by his reliance upon the state's declaration that its bill of particulars charged him as the person who had shot the victim in the course of the robbery.[5] The state did not seek to amend its information to allege that the defendant had acted as an accomplice even after he had testified that Manson had assaulted and robbed the victim, and a second witness had corroborated in part his testimony. We do not regard the state's notification to the defendant prior to argument of its intention to request a charge on accessorial liability as equivalent to an amendment offered seasonably before the close of evidence. Practice Book § 624. Accordingly, we need not decide whether such an amendment would have been proper in these circumstances. We conclude that the court's instructions concerning accessorial liability were not in substantial conformity with either the allegations in the bill of particulars or the evidence in the state's case-in-chief, and, therefore, hold that these instructions were erroneous.

---

[5] The dissenting opinion does not address the question of whether the defendant may have been prejudiced in his defense by presenting evidence furnishing a basis for his conviction as an accessory in reliance upon the state's oral amendment of its bill of particulars to the effect that the defendant had held the gun and shot the victim and the court's assurance that "the conduct which was engaged in . . . was the use of a handgun . . . and that is what you have to defend against."

## II

The Appellate Court determined that the trial court's erroneous instructions on accessorial liability as to both charges constituted a constitutional violation because due process requires that a criminal defendant be given notice of the specific charge against him and "the jury was instructed to consider a theory of liability of which the defendant had no fair notice . . . ." *State* v. *Steve,* supra, 707–708. Accordingly, it placed the burden on the state to prove that this error was harmless beyond a reasonable doubt and also held that the state had failed to meet this burden.

The state contends that the error in the case at bar was not of constitutional significance because any variance between the state's pleadings and the court's instructions on accessorial liability did not violate the defendant's due process right to notice of the specific charge against him, and that, therefore, the defendant has the burden of demonstrating that it is more probable than not that the erroneous action of the court affected the result. See *State* v. *Vilalastra,* 207 Conn. 35, 47, 540 A.2d 42 (1988); *State* v. *Jones,* 205 Conn. 723, 732, 535 A.2d 808 (1988). It argues that the defendant has failed to demonstrate that the error was harmful.

We need not decide whether the error was of constitutional significance. Even if the burden were on the defendant to prove harmfulness, we would conclude that the court's error more likely than not affected the result. The jury was never polled as to the basis for its verdict, and, therefore, it is uncertain whether the defendant was convicted as the principal offender, or as an accessory. *State* v. *Steve,* supra, 708. There was substantial evidence, however, suggesting that Manson was the principal in the robbery and assault. The

defendant testified that Manson had committed the robbery and assault. Id., 702. This testimony was corroborated in part by a witness who had seen Manson carrying a gun and bragging about robbing and shooting a "white dude." Id. That witness also testified that while Manson was talking, the defendant sat silently and made no comment. A sister of the defendant also testified that she had seen Manson in possession of the gun immediately before and after the shooting. She further testified that she had seen the defendant accompany Manson during this time. There is a significant likelihood that the defendant was convicted as a result of the court's erroneous instructions on accessorial liability. Accordingly, we conclude that this erroneous instruction was likely to have affected the result of this case, and hold, therefore, that the error was harmful.

We therefore affirm the judgment of the Appellate Court.

In this opinion PETERS, C. J., and HEALEY, J., concurred.

CALLAHAN, J., with whom COVELLO, J., joins, dissenting. I dissent. The majority opinion fails to mention that the bill of particulars and its oral amplification were based on the defendant's sworn statement. In his statement the defendant admitted shooting Scott Doyle and otherwise confessed to actions that could reasonably have led to his conviction as a principal in the robbery and assault of the victim.[1]

---

[1] The following statement was given by the defendant on June 13, 1985, some four months prior to trial:

"That on the month of April 1985 at about 4 P.M., Jason Day, this dude I only know by the name of Jeff, and I were standing on the corner across the street from the Blue Note Cafe which is on Walnut Street, in Waterbury, Ct. That while standing here talking, this dude I know by the name of Steward Damin came up to us, and said, this white dude who had a lot of money wanted to buy some weed, and this is when Jeff said, lets get him. Then I saw this white dude was walking down Walnut Street in the

The state's request for an instruction allowing the jury to convict the defendant of the crimes charged under the alternate theory of accessorial liability was grounded on the defendant's trial testimony. During his testimony the defendant denied that he shot the victim but admitted that he was there and shared in the proceeds of the robbery.[2] It has not been questioned that the defendant's testimony, coupled with other evidence adduced at the trial, might reasonably have led to his conviction as an accessory under General Statutes § 53a-8. See *State* v. *Carter,* 196 Conn. 36, 45, 490 A.2d 1000 (1985); *State* v. *Rothenberg,* 195 Conn. 253, 257, 487 A.2d 545 (1985); *Lovett* v. *State,* 516 A.2d 455,

---

middle of the road. That this white dude came right up to us, and said, do you have any weed for sale, and this is when Jeff said, that he had Zudy for sale, which is a type of weed which has embalming fluid in it. That the white dude said, he didn't want any, and that he was going to cop some ounces. Then he walked away, and I saw him walk across the street to the second building from the Blue Note, and I saw this Black dude on the second floor porch, and I heard him yell to the white dude to come around the back, and the white dude walked around the back of this building. That at this time this dude Jeff, and I ran over to the white dude, and Jeff handed me the gun he had which is 22. Then Jeff told the white dude to hand over the money, and the weed. . . . And the white dude said, no, and as he said this he swung at us, and this is when I shot him in the stomach with the gun I had.

"I also like to state that when Jeff handed me the gun it was cocked, and when I shot this white dude I didn't really mean to do it.

"I also like to state that after I shot the white dude Jeff went into the white dude's back pocket, and took his wallet out, and took the money out of the wallet, and threw the wallet on the ground. That after this Jeff took the gun from me, handed me some money which was about $70.00 or $80.00 dollars, and we both ran off, and as we were running Jason Day ran with us, but Jason Day didn't have anything to do with it.

"I also like to state that this dude Jeff lives on the second floor in a yellow house on Hazel Street, in Wtby, Ct.

"I also like to state that the voluntary statement is the truth to the best of my knowledge. Nothing to follow.

"S/Carl Edward Steve"

[2] E.g., "And, I see Jeff go in his pocket and pull out his wallet, took out the money, ran up to me and gave me some money. And, I ran, and the other boy ran down the street."

466 (Del. 1986), cert. denied, 481 U.S. 1018, 107 S. Ct. 1898, 95 L. Ed. 2d 504 (1987). We never get to that, however, because the majority concludes that the defendant was somehow "prejudiced" by the submission of the alternate theory of accessorial criminal liability to the jury. The "prejudice" apparently occurring because the evidence on which the accessorial liability instruction was based deviated from the bill of particulars.

It is, first of all, difficult for me to fathom what the state could or should have done other than frame the bill of particulars in accordance with the defendant's confession. Also, I find it impossible to comprehend how the defendant was surprised or prejudiced in his defense by the submission to the jury of an alternate theory of criminal liability based on his own testimony. See *State* v. *Roque,* 190 Conn. 143, 156, 460 A.2d 26 (1983). The state did present evidence in its case-in-chief to prove that the crimes alleged were committed in substantially the manner charged in the substitute information and bill of particulars. It was the defendant in his testimony who proffered a role for himself in those crimes that was different from that alleged by the state. It appears a bit illogical that the defendant can, himself, offer incriminating evidence at variance with the bill of particulars and then complain that he was prejudiced by that variance. While the state may be limited to proving that the offenses alleged were committed in substantially the manner described in the bill of particulars, I know of no rule that requires incriminating evidence from the defendant to be ignored by the state or the trial court. In short, it was the evidence offered by the accused, not that offered by the state, that occasioned an accessory charge under § 53a-8 and the trial court did not err in giving it. *Johnson* v. *State,* 518 N.E.2d 1073, 1077–78 (Ind. 1988); *Hoskins* v. *State,* 441 N.E.2d 419, 424–25 (Ind. 1982).

Further, until now, the established law in this state was that a charge on accessorial liability required no notice and that "a defendant may be convicted as an accessory even though he was charged only as a principal as long as the evidence presented at trial is sufficient to establish accessorial conduct. *State* v. *Harris,* 198 Conn. 158, 502 A.2d 880 (1985); *State* v. *Ferrara,* 176 Conn. 508, 513 n.2, 408 A.2d 265 (1979); *State* v. *Parham,* 174 Conn. 500, 508, 391 A.2d 148 (1978)." *State* v. *Fleming,* 198 Conn. 255, 268 n.15, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); see also *State* v. *Crump,* 201 Conn. 489, 493, 495, 518 A.2d 378 (1986); *State* v. *Johns,* 184 Conn. 369, 373–74 n.7, 439 A.2d 1049 (1981). Also, "the propriety of a charge on 'aiding and abetting' is predicated on the basis of the sufficiency of the evidence heard during the course of the trial, *not* on the mention of such charges in pretrial documents. See *State* v. *Ives,* 172 Conn. 322, 323, 374 A.2d 244 (1977); *State* v. *Raffone,* 161 Conn. 117, 128, 285 A.2d 323 (1971); *State* v. *Cianflone,* 98 Conn. 454, 466, 120 A. 347 (1923); *State* v. *Burns,* 82 Conn. 213, 218–19, 72 A. 1083 (1909); *State* v. *Hamlin,* 47 Conn. 95, 120 (1879)." *State* v. *Ferrara,* 176 Conn. 508, 513 n.2, 408 A.2d 265 (1979).

Apparently this is no longer the law. According to the majority, even a defendant who confessed to being a principal, repudiated his confession at trial, and testified to possible accessorial liability is somehow surprised and prejudiced and entitled to a new trial because the jury was instructed as to that possible alternate theory of guilt under General Statutes § 53a-8. That is an incongruous result. I would reverse the Appellate Court.