[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this habeas proceeding the petitioner claims that he was denied effective assistance of counsel at his criminal trial in violation of his rights guaranteed under the sixth andfourteenth amendments of the United States constitution and Article I of the Connecticut constitution. The petitioner was charged by substitute information dated April 10, 1991 with robbery in the first degree, in violation of General Statutes § 53a-134
(a)(2), attempted assault in the first degree in violation of General Statutes § 53a-8, § 53a-49 and § 53a-59
(a)(1), and carrying a pistol without a permit in violation of General Statutes § 29-35 and 29-37 (b). Following a jury trial he was convicted of robbery in the first degree and attempted assault in the first degree. The petitioner was sentenced by the court (Maiocco, J.) to serve a term of imprisonment of seven years on the robbery charge consecutive to a seven year sentence on the assault charge, for a total effective sentence of fourteen years. The petitioner is presently in the custody of the Commissioner of Correction serving that CT Page 5586 sentence.
More specifically the petitioner claims, pursuant to his amended habeas petition dated January 6, 1997, that trial counsel, Attorney Erskine McIntosh, provided ineffective assistance in that a conflict of interest existed in trial counsel's representation of the petitioner. Additionally the petitioner claims that trial counsel provided ineffective assistance by failing to investigate on a timely basis certain facts that would have aided in the defense of the petitioner, failed to request that the state file a bill of particulars, and failed to take exception to certain instructions to the jury by the court on accessory liability. The petitioner therefore claims that his incarceration is illegal.
 I
The facts as set forth in the appellate decision will be restated here for clarity. "The jury reasonably could have found the following facts. On the morning of June 2, 1990, the defendant and a second male approached the victim, Angel Perez, as he was getting out of his automobile in Bridgeport. The second male pointed a gun at Perez and demanded his car key. When Perez refused, he was told by the defendant to `give it to him or we will shoot you.' Perez relinquished his car key and was told to sign over the title to the car or he would be shot. Perez agreed to do as commanded if they would allow him to remove some cans that he had collected for deposit money and stored in plastic bags in the car. While doing so, Perez pulled out a metal rod and hit the second male in the face several times. Perez then fled and was shot at by the second male. The defendant and the second male fled.
The police arrived and began a search of the area. The two assailants were observed walking together a short distance away and an officer ordered them to stop. The second male pulled a handgun from his waistband, handed it to the defendant, and fled. The defendant was seized. Shortly thereafter, Perez identified the defendant as one of the two men who had robbed him." State v.Walton, 34 Conn. App. 223, 225, 641 A.2d 391, cert. denied,230 Conn. 902, 644 A.2d 916 (1994).
 II
The petitioner's right to the effective assistance of counsel CT Page 5587 is assured by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. Copas v. Commissioner of Correction,234 Conn. 139, 153, 662 A.2d 718 (1995). The petitioner's right to effective assistance of habeas counsel is predicated on General Statutes § 51-296, which provides for the appointment of counsel for an indigent person in any habeas corpus proceeding arising from a criminal matter. Lozada v. Warden, 223 Conn. 834,838, 613 A.2d 818 (1992).
To establish that his trial counsel was ineffective, the petitioner must prove both that his counsel s performance was deficient and that the petitioner was actually prejudiced by such deficient performance. Strickland v. Washington, 466 U.S. 668,687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Copas v. Commissionerof Correction, supra, 234 Conn. 154; Lozada v. Warden, supra,223 Conn. 842-43; Bunkley v. Commissioner of Correction,222 Conn. 444, 445, 610 A.2d 598 (1992). To prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352, 357,559 A.2d 206 (1989). Competent representation is not representation with no error. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised. (Internal quotation marks omitted.) Jeffrey v. Commissioner of Correction,36 Conn. App. 216, 219, 650 A.2d 602 (1994). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotations marks omitted.)Johnson v. Commissioner of Correction, 36 Conn. App. 695, 703,652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995).
With respect to the prejudice component of the Strickland
test, the petitioner must demonstrate that, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, supra,466 U.S. 687. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather, a successful petitioner is required to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the CT Page 5588 result of the proceeding would have been different. Copas v.Commissioner of Correction, supra, 234 Conn. 147. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, supra, 694.
Additionally when a claim of ineffective assistance is made relating to an attorney's duty to investigate and prepare for trial it cannot be claimed that failure to investigate was a strategic decision of counsel. Our Supreme Court has stated the "failure to conduct an adequate investigation is not a matter of trial tactics." Sieman v. Stoughton, 184 Conn. 547, 557,440 A.2d 210 (1981).
The legal standard to be applied to allegations of ineffective assistance of counsel based upon an alleged conflict of interest differ from that set forth above. As stated, defendants in a criminal matter have a constitutional right to effective assistance of counsel. "As an adjunct to this right, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest. Wood v. Georgia, 450 U.S. 261,271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); Glasser v.United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed.2d 680 (1942);State v. Martin, 201 Conn. 74, 78, 513 A.2d 116 (1986) Festo v.Luckhart, 191 Conn. 622, 626-27, 469 A.2d 1181 (1983)." Statev. Williams, 203 Conn. 159, 166-67, 523 A.2d 1284 (1987).
The primary distinction in reviewing "actual conflict of interest" claims as compared to an "actual ineffective assistance" claim involves the prejudice prong of the Strickland
test. The petitioner in a conflict of interest claim need not demonstrate actual prejudice. "Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. "Strickland v. Washington, supra,466 U.S. 687. In a case of a claimed ineffective assistance of counsel based upon a conflict of interest, in order to establish a violation of the sixth amendment, the defendant has a two-pronged task. He must establish "that counsel `actively represented conflicting interests' and that `an actual conflict of interest adversely affected his lawyer's performance.'" Id., 692 quotingCuyler v. Sullivan, 446 U.S. 335, 350, 348, 100 S.Ct. 1708,64 L.Ed.2d 333 (1980). See also Burger v. Kemp, 483 U.S. 776, 783,107 S.Ct. 3114, 97 L.Ed.2d 638, reh. denied, 483 U.S. 1056, 108
CT Page 5589 S.Ct. 32, 97 L.Ed.2d 820 (1987); State v. Rodriguez,200 Conn. 685, 696, 513 A.2d 71 (1986).[16].
An actual conflict of interest exists when the interests of trial counsel diverge from the interests of the client. Conflicts of interest most frequently arise when defense counsel seeks to represent multiple defendants in the same criminal action.
 III
The court makes the following additional findings of fact and conclusions of law with respect to each of the specific claims made by the petitioner.
a. Conflict of Interest
The petitioner claimed that at his criminal trial he was coerced into committing the crimes by an unidentified assailant, John Doe, and that he was not a willing participant. John Doe's name was not known to the petitioner or his counsel at the time of trial or sentencing. In December 1990, the petitioner advised trial counsel that he had seen John Doe in the same correctional facility in which he was then housed.
Sometime after petitioner's sentencing, the petitioner learned that the individual he claimed that coerced him was in fact Charles Carr. From September 25, 1990 to March 31, 1991 Carr, who was incarcerated on other non-related charges, was represented by the same office of the public defender as was the petitioner's trial counsel. Thus the petitioner claims that both Carr and he were represented for a period of four months by the same office of the public defender and that this joint representation created a conflict of interest. However neither trial counsel nor the petitioner knew Carr's name until after the trial and sentencing were completed. Thus not knowing that Carr was the individual alleged by the petitioner to be John Doe until after the trial, it would have been impossible for trial counsel to know of the existence of any conflict. In his trial brief petitioner states: "This representation continued despite the Petitioner informing Attorney McIntosh at least four months prior, December, 1990, that he had seen Charles Carr[1] while incarcerated and believed he was represented by the Public Defender's office." While it is undisputed that trial counsel was aware of the claim by the petitioner in December 1990 that he had seen John Doe, the court does not accept that trial counsel had CT Page 5590 good cause to believe that John Doe was also represented by the public defender's office. No credible evidence was offered to demonstrate how counsel's duty of undivided loyalty to his client was compromised. This duty to the petitioner is the fundamental principle in any analysis of an actual conflict of interest claim. See Phillips v. Warden, t220 Conn. 112, 136, 595 A.2d 1356
(1991). Since trial counsel had no knowledge of the name, inmate number, or any other information that would have allowed him to identify the John Doe it is difficult to imagine how trial counsel could have breached his duty of loyalty to the petitioner. Additionally while the petitioner is not required to establish any actual prejudice he nevertheless must demonstrate that the actual conflict affected trial counsel's performance. No credible evidence was produced demonstrating any impact on counsel's performance as a result of this claimed conflict.
b. Ineffective Assistance — Failure to Investigate
At the habeas hearing trial counsel, McIntosh testified that he was assigned to handle the petitioner's case sometime after July 17, 1990. On that date the petitioner entered pleas of not guilty and elected a jury trial. Trial counsel indicated that he did not believe he was present at the arraignment but that the petitioner was represented by another public defender. On July 18, 1990, trial counsel filed a discovery motion on behalf of the petitioner and represented him thereafter.
In December 1990, trial counsel first became aware of the existence of the unknown assailant. The petitioner claimed to have seen him at the Bridgeport correctional institution at that time. This was approximately four months prior to the commencement of the trial. Petitioner claims that if trial counsel had taken steps to quickly investigate this disclosure, then the chances of discovering Carr's identity would have been significantly enhanced. Counsel, upon learning this information, did take steps to investigate the matter by contacting the warden on two separate occasions in an effort to obtain his cooperation in producing a photo spread of the inmates located in the cell block at that time. Petitioner's Exhibit B-2 pg. 44-45. These efforts were frustrated by the refusal of the warden to produce photographs due to security concerns. On April 19, 1990, trial counsel subpoenaed the warden of the Bridgeport facility and demanded the production of the photographs. This subpoena was issued in conjunction with the commencement of the trial. A hearing was held on the warden's Motion to Quash the subpoena CT Page 5591 which motion was denied. The warden was required to produce photocopies of all of the inmates located in the Bridgeport facility on April 19, 1990 for the inspection and review by the petitioner. Upon review of the photographs the petitioner was unable to identify the alleged person whom the petitioner claimed coerced him into committing the crime. Evidence was presented at the hearing on the motion to quash that indicated that prisoners are routinely transferred to different facilities and that a prisoner who was in the facility in December may not be there in April. After trial counsel was successful in having the subpoena quashed his client viewed the photographs and reported to the court that only one photograph was of such a quality that the petitioner was unable to clearly determine whether that photograph was the individual he was hoping to identify. A higher quality reproduction was supplied by the warden but the petitioner was unable to identify the John Doe.
The petitioner claims that the trial counsel was ineffective in that his delay in obtaining the photographs for four months caused the petitioner to lose the chance of identifying the true perpetrator of the crime. The court is not convinced. It is established law that the court need not determine the first prong of the Strickland standard if the claim can readily be disposed of on the second or prejudice prong of that standard. Stricklandv. Washington, supra, 466 U.S. 697. At the habeas hearing no evidence was produced to show that Carr was in fact incarcerated at the Bridgeport facility in December 1989. Carr did not testify and no prison records were produced to demonstrate that Carr was actually housed in Bridgeport in December 1989. Thus it impossible to find that had counsel acted in as expeditious fashion as the petitioner believes he should have, that the result would have been any different. Furthermore, even if it was determined that Carr was at the Bridgeport facility, there is no evidence in the record as to how the petitioner would have used this information at trial. Certainly if Carr did what the petitioner claimed, Carr would be reluctant to testify to those facts thus implicating himself. Trial counsel could not have utilized Carr as a witness at the criminal trial knowing that he would invoke his privilege against self incrimination. State v.Iverson, 48 Conn. App. 168, 173, ___ A.2d ___ (1998).
These claims must therefore fail as no prejudice casting doubt on the fairness of the trial has been demonstrated by the petitioner and his burden has not been sustained. CT Page 5592
The petitioner also claims that trial counsel failed to investigate the existence of an eye witness to the petitioner's being robbed and coerced into the acts that lead to his conviction. The petitioner claimed at both his criminal trial and at the habeas hearing that earlier on the same morning of June 2, 1990, the petitioner had left his residence to purchase a newspaper. After doing so he was accosted by the unidentified assailant who robbed him and then demanded that he remove his clothing. This the petitioner claims was witnessed by a man in a gray pick-up truck who was driving by the scene. At his criminal trial he testified that the driver was either a white or Puerto Rican male and was certain he was not a black man. However at the habeas hearing he described him as a white male with red hair and driving a gray pick-up truck. Additionally he also claimed at his criminal trial that he saw a man in a gray pick-up truck at the scene of his arrest on June 2, 1990. Under cross-examination, he admitted that he was unable to state that it was the same person whom he claimed witnessed the petitioner being robbed.
The petitioner claims that trial counsel failed to adequately investigate and locate this individual and therefore counsel was ineffective as this witness would aid in the defense that the petitioner was coerced. No evidence was produced to indicate how the petitioner expected trial counsel to determine who this individual was, if he, in fact, existed at all. Trial counsel testified that he investigated the claim and that he believes that he also retained an investigator. Trial counsel was not able to refresh his recollection of the events surrounding his representation of the petitioner as the trial file was unavailable to both him and petitioner's habeas counsel. See Petitioner's Exhibit A, Affidavit dated December 22, 1997. The petitioner presented no police report indicating the existence or this individual, no witness to corroborate his existence, nor any other evidence other than his testimony as to the existence of this person. The court does not find this testimony credible. That is not to say, however, that there was not a witness to the robbery of the victim, Perez. That individual, Hoffman, testified at the criminal trial that he witnessed the crime and that he was also present at the scene of the arrest. His testimony indicated that it appeared to him that the defendant was not being coerced into helping the unidentified assailant commit the crime but that he appeared to be a willing participant. This witness was not helpful to the defense. If the petitioner claims that yet another witness was involved other than Hoffman, then the petitioner is demanding of his trial lawyer what can only be described as the CT Page 5593 impossible task of locating an individual with a limited description of him and no other leads as to his identity other than he was driving a gray pick-up truck. The petitioner has failed to sustain his burden of demonstrating that trial counsel's performance was not within the broad range of competence displayed by lawyers with ordinary training and skill in the criminal law. The petitioner has also failed to present any evidence that had counsel found this individual he would have been at all helpful to the defense. Thus neither prong of theStrickland test has been met.
c. Ineffective Assistance — Bill of Particulars and failure toobject to instructions on accessorial liability.
Additionally the petitioner claims that counsel was ineffective by failing to file a request for a bill of particulars land to take exception to the trial court's instructions on accessorial liability. Trial counsel had no recollection of filing a motion for a bill of particulars but stated that it was his experience that such requests were routinely denied when the state had filed a long form information. In the petitioner's criminal trial such a long form information was filed and it was introduced at the habeas hearing as Respondent's Exhibit 1. It provided the petitioner with the statutory sections of the crimes charged, the victim's name, the date and time of the crime, and the place of the commission of the crime. Additionally it described the manner in which the crime was committed. Specifically it stated that "the said Lonnie Walton stole certain property, and in the course of commission of the crime he or another participant was armed with a deadly weapon, to wit: a pistol in violation of Section 53a-134 (a)(2) of the Connecticut General Statutes."Respondent's Exhibit 1. The information further stated with respect to the attempted assault charge that "the said Lonnie Walton did intentionally aid John Doe, while the latter, with the intent to cause serious physical injury to the said ANGEL A. PEREZ, by means of a deadly weapon, to wit :a pistol, in violation of Section 53a-8, Section 53a-49
and Section 53a-59 (a)(1) of the Connecticut General Statutes."Respondent's Exhibit 1.
The petitioner claims that as a result of trial counsel's failure to request a bill of particulars the Appellate Court applied a lesser standard of review to the trial court's jury instruction on accessorial liability. CT Page 5594
The respondent argues that the "Appellate opinion in State v.Walton, 34 Conn. App. 223, 225-228 (1994) forecloses this court from ruling in the petitioner's favor." Respondent's Memorandum of Law dated February 13, 1998. The court disagrees with the, respondent's contention that this issue has previously been decided. The issue before this court is whether trial counsel afforded ineffective assistance of counsel to the petitioner by his failure to request a bill of particulars thus resulting in the Appellate Court not applying the principles set forth inState v. Steve, 208 Conn. 38, 544 A.2d 1179 (1988). In Steve,
defense counsel sought and obtained a bill of particulars that charged the defendant with criminal liability for robbery in the first degree and assault in the first degree as a principal. The trial court instructed the jury on accessorial liability over the timely objection of defense counsel, even though the bill of particulars set forth facts only sufficient to support his participation as a principal. The court found that "the defendant was prejudiced in his defense as a result of a substantial variance between the allegations in the bill of particulars and the court's instructions concerning accessorial liability." Id., 46. The court also found that the state had presented no evidence to support accessorial liability. Id.
In this habeas matter, the petitioner appears to be claiming that had trial counsel requested a bill of particulars the state would have been limited to proof of the allegations contained therein and thus the instruction to the jury on accessorial liability would have been in error. This logic is flawed for several reasons. The underlying premise of the petitioner's argument is that if a bill of particulars had been requested the state would have been required to file one. This is not necessarily true as it is within the sound discretion of the trial court as to whether the state should be required to do so. The testimony at the habeas hearing was that, in trial counsel's experience, requests for bills of particular are routinely denied by the courts when, as in this case, a long form information has been filed. Nevertheless, assuming arguendo, that the court would have ordered the filing of the bill, there is no evidence that the state would not have alleged facts sufficient to encompass accessorial liability as well as principal liability.
Additionally, unlike in Steve, in this matter, the state had significant evidence of the petitioner's culpability either as a principal or an accessory. The petitioner is also unable to demonstrate that if the bill of particulars had been limited CT Page 5595 solely to liability as a principal, that the court would not have permitted an amendment pursuant to Practice Book § 624 (now Practice Book (1998 Rev.) § 36-18 after the defendant testified and before the close of evidence. Id., 46.
It should also be noted that the Connecticut Supreme Court has described the purpose of a bill of particulars and the limitations that it imposes on the state in the prosecution of criminal charges. The court has stated that the purpose of a bill of particulars is "to supply both the accused and the court additional information concerning an accusation that the defendant has committed an act or acts constituting a criminal offense. 41 Am.Jur.2d, Indictments and Informations, 163." (Internal quotation marks omitted.) State v. Rogue,190 Conn. 143, 154, 460 A.2d 26, (1983). The test to be applied is whether the state's pleadings informed the defendant of the charge against him with sufficient precision to allow him to prepare a defense, avoid prejudicial surprise and plead his guilt or innocence in bar of any future prosecution for the same offense.State v. Ballas, 180 Conn. 662, 664, 433 A.2d 989 (1980); Statev. Sumner, 178 Conn. 163, 168, 422 A.2d 299 (1979). At trial the petitioner testified that he was present during the events but was an unwilling participant, not that he was not a participant at all. Thus it cannot reasonably be said that trial counsel or the petitioner were surprised by the court's charge on accessorial liability.
Finally no evidence was adduced at the habeas hearing that in this situation a reasonably competent lawyer with ordinary training and skill in the criminal law would have sought a bill of particulars where the facts were known to the petitioner and the defense was based on coercion not a denial that he participated. Additionally the court finds that the claimed errors of counsel were not so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
For all of the foregoing reasons, the petition is dismissed.
Zarella, J.