## SIXTO NIEVES *v.* COMMISSIONER OF CORRECTION (AC 17256)

Lavery, Schaller and Daly, Js.

---

Argued September 29, 1998—officially released January 26, 1999

*Noelle Gately,* special public defender, for the appellant (petitioner).

*Richard F. Jacobson,* supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

SCHALLER, J. In this appeal from the judgment of dismissal of an amended petition for habeas corpus, the petitioner claims that the habeas court improperly determined that his trial and appellate counsel provided effective assistance during his trial and his direct appeal from his conviction for attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a,[1] assault in

---

[1] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

the first degree in violation of General Statutes § 53a-59[2] and carrying a pistol without a permit in violation of General Statutes § 29-35.[3] The petitioner claims that his trial counsel failed to investigate and prepare the case adequately, namely, he failed to interview seven potential witnesses, including five revealed by the state in a supplemental disclosure shortly before trial. The claimed ineffective assistance of the petitioner's appellate counsel, the same attorney, stems from counsel's failure to raise the issue of an improper jury instruction on accessorial liability. We affirm the judgment of the habeas court.

The following facts and procedural history are necessary to the disposition of this appeal. On October 14, 1992, Robert Lang, William Lang and Linwood Bailey were working as part of a crew hired to repair and replace the boilers at the Evergreen Manor apartment complex in Bridgeport. They went to the apartment office where a dispute arose between the Langs and employees at the apartment complex, including the petitioner. Sometime thereafter, the boiler crew was approached by a group of armed males, including the petitioner. After an oral dispute, Robert Lang was shot several times and William Lang was shot once. At trial, both of the Langs and Bailey testified that the petitioner was the person responsible for the shootings. Several

General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

[2] General Statutes § 53a-59 provides in relevant part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] General Statutes § 29-35 provides in relevant part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

witnesses for the defense testified, however, that the petitioner was not the shooter. Following the petitioner's conviction, he took a direct appeal to this court, and we affirmed the judgment. *State* v. *Nieves*, 36 Conn. App. 930, 651 A.2d 292 (1994).

Following the disposition of his direct appeal, the petitioner filed an amended petition with the habeas court raising multiple allegations of ineffectiveness of trial and appellate counsel. A hearing was held over the course of three days on the petitioner's amended petition for a writ of habeas corpus. Mark Gross, the petitioner's trial and appellate counsel, testified that he represented the petitioner throughout his trial and appeal. He stated that, as a private attorney, he had limited funds available for photographs and investigation. Gross testified concerning his investigation and preparation of the case for trial, which included interviewing several witnesses, taking them to the scene of the shootings and securing photographs of the scene.

Gross stated that he did not interview the Langs, the shooting victims, precisely because they were the victims of the crime, and he did not desire to "raise a hornet's nest." It did not make sense to him to interview the two victims in a situation where one of them had almost been killed in the shooting. He did not interview Bailey because he worked for the Langs and was with them when they were shot. Gross did not seek out two other witnesses, Oscar Sanchez and Fernando Alvarez, because he did not want to "kick a sleeping dog."[4] Gross

---

[4] Gross testified as follows: "I felt there was more of an impact with my asking the officers conducting, you know, the photo array, that as a matter of fact, other people couldn't identify, then, to put someone on who might say they were confused or no, that is the guy, the pictures weren't good. So, it was a value judgment that Robert Lang's testimony would be very strong on that point, and that the officers conducting the photo array would, both—would testify that two people who were there did not identify him, and that that would have a better probative [effect] with the jury, than to put people on who I don't know. Because the fear is, what—what would

testified that even if he had sufficient funds to pay an investigator to find them, he would not have interviewed them. He was aware that Robert Lang could not identify his client. He recalled from the hearing on the motion to suppress the photographic identification that Sanchez and Alvarez could not identify the petitioner. In fact, the state filed supplementary discovery stating that Robert Lang, Sanchez and Alvarez could not positively identify the petitioner from the photographic array. It was Gross' judgment that having the police officer testify at trial that these witnesses could not make an identification would be more significant than calling them as witnesses.

Gross testified that he did not interview Michael Rosenstock, an employee of the insurance company investigating the incident, because the petitioner and his witnesses had referred to him disparagingly, and the petitioner said he did not want him called. Gross testified that he was ordered not to bring Rosenstock in as a witness even after Gross told the petitioner that they had to use him. With regard to Michelle Ramera,[5] the final witness whom the petitioner claims Gross failed to question, Gross testified that this witness was mentioned by one of the petitioner's witnesses as having been present at the time of the shootings. Gross stated that Ramera could not be located by him, by the petitioner or by the petitioner's friend, Myra Reyes.

have happened if one of them came in and said, 'Darn it, now I recall.' And that's a fear, when you try a case. There's an old adage, that you don't ask questions of a person if you don't know the answer. And the fear was to bring people in or get them in, and, then have them put a client away by saying, darn it, now I recognize him. So, that was the thought process that I used, in staying with the officer, the police officer, as I say, testifying, at length, that two people couldn't identify him and that Mr. Lang didn't . . . ."

[5] At the habeas hearing, there was some discrepancy whether the witness' name is Michelle Ramos or Michelle Ramera. After reviewing the transcripts we are convinced that the two names refer to the same person. We will refer to the witness as Michelle Ramera.

William Koch, Jr., an attorney, testified as an expert witness on behalf of the petitioner. He offered the opinion that the failure to interview the seven witnesses was improper and could not be justified as trial strategy. The habeas court dismissed the petition, determining that the petitioner had failed to prove that the representation by trial and appellate counsel was deficient or prejudicial. The habeas court certified the appeal to this court.

The habeas court found that under the two-pronged test established by *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the petitioner failed to show, as to the first prong, that his counsel's performance was ineffective or, as to the second prong, that he was prejudiced by the representation of his counsel. "The *Strickland* test requires that the defendant 'must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Bunkley* v. *Commissioner of Correction*, [222 Conn. 444, 445, 610 A.2d 598 (1992)]." (Internal quotation marks omitted.) *State* v. *Patrick*, 42 Conn. App. 640, 650, 681 A.2d 380 (1996).

A court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim. *Aillon* v. *Meachum*, 211 Conn. 352, 362, 559 A.2d 206 (1989). "In this context, a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case. . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome." (Citation omitted; internal quo-

tation marks omitted.) *Bunkley* v. *Commissioner of Correction,* supra, 222 Conn. 445–46.

"[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. . . . [A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland* v. *Washington,* supra, 466 U.S. 695–96. To establish prejudice, the petitioner must show that "as a result of that [deficient] performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in [the] appeal." *Bunkley* v. *Commissioner of Correction,* supra, 222 Conn. 454; see *Harris* v. *Commissioner of Correction,* 40 Conn. App. 250, 261, 671 A.2d 359 (1996); *Johnson* v. *Commissioner of Correction,* 34 Conn. App. 153, 164, 640 A.2d 1007, cert. denied, 229 Conn. 919, 644 A.2d 914 (1994). The simple test of prejudice is whether it is reasonably probable that the petitioner remains burdened by an unreliable determination of guilt. See *Bunkley* v. *Commissioner of Correction,* supra, 454 ; *Sekou* v. *Warden,* 216 Conn. 678, 690, 583 A.2d 1277 (1990).

"[T]he burden that the petitioner must sustain for a favorable outcome on his ineffective assistance of counsel claim is a higher one than he would have had to sustain had the actual merits of the same issue been raised on direct appeal." *Valeriano* v. *Bronson,* 209 Conn. 75, 87, 546 A.2d 1380 (1988). "A reviewing court must be 'highly deferential' to counsel's decision and judge the action 'from counsel's perspective at the time.'

*Strickland* v. *Washington,* supra, [466 U.S. 689]." *Valeriano* v. *Bronson,* supra, 87. On appeal, "[t]he facts found by the habeas court may not be disturbed unless such findings are clearly erroneous." *Rodriquez* v. *Commissioner of Correction,* 35 Conn. App. 527, 535, 646 A.2d 919, cert. denied, 231 Conn. 935, 650 A.2d 172 (1994). When those facts are essential to a determination of whether the petitioner's sixth amendment rights have been violated, it is a mixed question of law and fact requiring application of legal principles to historical facts and plenary review. *Phillips* v. *Warden,* 220 Conn. 112, 131, 595 A.2d 1356 (1991); *McIver* v. *Warden,* 28 Conn. App. 195, 203, 612 A.2d 103, cert. denied, 224 Conn. 906, 615 A.2d 1048 (1992).

In this case, the habeas court dismissed the petition on the basis of the petitioner's failure to establish both *Strickland* prongs. Again, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim. " '[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the [claimed] errors.' " *Strickland* v. *Washington,* supra, 466 U.S. 696. We conclude that an examination of the prejudice prong alone is sufficient to determine that the habeas court's decision was correct. The habeas court properly determined that, even if trial and appellate counsel's performance was deficient, the petitioner failed to establish prejudice.

I

The petitioner claims first that his trial counsel provided ineffective assistance in failing to conduct a proper investigation. Specifically, the petitioner claims that his trial counsel failed to interview seven potential

witnesses, five of whom were identified by the state in a supplemental disclosure. We are not persuaded.

Three of the five witnesses, William Lang, Robert Lang and Bailey, testified consistently with the representations in the supplemental disclosure that they could not positively identify the petitioner from the photographic array. Sanchez and Alvarez were not called as witnesses at trial. The petitioner failed to produce testimony at the habeas hearing as to what the witnesses would have said if called. If Sanchez and Alvarez had testified that they could not identify the petitioner as the shooter, that testimony would have been cumulative, at best. Several of the witnesses called by the defense at trial testified that the petitioner was not the shooter and Robert Lang conceded that he had failed to identify the petitioner from the photographic array, even though he identified the petitioner at trial.

The petitioner offered no evidence regarding the nature of the testimony that Ramera would have produced if she had been called. Rosenstock, who Gross stated was not called at the petitioner's request, was not produced as a witness before the habeas court and the nature of his testimony is unknown. The failure of the petitioner to offer evidence as to what Sanchez, Alvarez, Ramera and Rosenstock would have testified is fatal to his claim. *Ostolaza* v. *Warden*, 26 Conn. App. 758, 766–67, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992). In *Ostolaza*, our Supreme Court determined that the petitioner's failure to show that the claimed missing witnesses would have been available or that their testimony would have been relevant and admissible was fatal to the petitioner's claims. See also *State* v. *Marra*, 215 Conn. 716, 735, 579 A.2d 9 (1990) (failure to produce records prevents assessment of whether defendant's constitutional right to confrontation impaired by his inability to gain access to records).

The petitioner seeks to have us use hindsight with regards to his counsel's decision not to call the witnesses to testify. We will not do so. We have stated that "the presentation of testimonial evidence is a matter of trial strategy. . . . 'The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense.' *State* v. *Talton,* [197 Conn. 280, 297, 497 A.2d 35 (1985)]." (Citation omitted.) *Chace* v. *Bronson,* 19 Conn. App. 674, 680–81, 564 A.2d 303, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989). In the absence of that showing by the petitioner, we are unable to conclude that he was prejudiced by counsel's failure to interview the witnesses.

The petitioner relies on *Siano* v. *Warden,* 31 Conn. App. 94, 99, 623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993), and *Siemon* v. *Stoughton,* 184 Conn. 547, 555, 440 A.2d 210 (1981). The petitioner's reliance is misplaced. Those cases are distinguishable because the petitioners produced evidence as to the exculpatory nature of the testimony that could have been offered by the missing witnesses. In the present case, it is a matter of conjecture and speculation as to whether there was a prejudicial effect of counsel's decisions not to interview the missing witnesses. With regard to the Langs and Bailey, no prejudice has been demonstrated since the witnesses testified consistently with the supplemental disclosure. With regard to the other four witnesses, the petitioner has also failed to demonstrate prejudice. Because the petitioner has failed to establish that he was prejudiced by the failure of trial counsel to interview the witnesses in question, we cannot conclude that there is any probability that the petitioner is burdened by an unreliable conviction.

## II

The petitioner also claims that his appellate counsel provided ineffective assistance in failing to pursue on

appeal his claim that the trial court should not have instructed the jury on accessorial liability. We conclude that the habeas court properly found that neither prong of *Strickland* was satisfied as to this claim.

The state charged the petitioner, in a long form information, as the principal in the crimes charged. The petitioner did not file a motion for a bill of particulars. In the course of cross-examination of the state's witnesses during the state's case-in-chief, defense counsel elicited testimony concerning a second shooter.[6] On the basis of that testimony, the trial court decided, suo moto, to instruct the jury on accessorial liability. Although defense counsel took an exception to this instruction, he did not raise the issue on appeal.

The petitioner claims, in essence, that he was put on notice by the long form information that he was charged as a principal only. Because the state had put him on notice adequately as to the theory of liability, no motion for a bill of particulars was necessary. To prevail on this claim, the petitioner must establish that his appellate counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in criminal law, and that this lack of competency contributed so significantly to the affirmance of his conviction as to have deprived him of a fair appeal, thus causing an unreliable conviction to stand. *Strickland* v. *Washington*, supra, 466 U.S. 687; *Valeriano* v. *Bronson*, supra, 209 Conn. 84–86. To establish that prejudice resulted from appellate counsel's deficient performance, a petitioner must show that "as a result of that performance, there

---

[6] Bailey testified that it seemed to him that there were two people shooting at the victims. He identified the defendant as the shooter, and also identified another person as the one who shot his boss. Robert Lang testified that he selected a photograph of one of two people who were the shooters. William Lang testified that he recalled observing both a black male and a Hispanic male shooting.

remains a probability sufficient to undermine confidence in that verdict that resulted in his appeal." *Bunkley* v. *Commissioner of Correction*, supra, 222 Conn. 454.

The petitioner relies on *State* v. *Steve*, 208 Conn. 38, 544 A.2d 1179 (1988), to support his claim. In *Steve*, the defendant orally requested that the state clarify its bill of particulars as to the allegation of assault in the first degree. The trial court denied the request, ruling that the bill of particulars made it clear that the defendant was charged as a principal. The trial court later instructed the jury, on the basis of evidence pertaining to a second shooter, that it could consider accessory liability as an alternative. Our Supreme Court reversed, holding that the state was bound by the theory alleged in the bill of particulars. Our Supreme Court stated that "[t]he basic principle that the state must prove the crime in the manner alleged in the bill of particulars precludes a conviction based upon evidence that it was committed in a substantially different manner regardless of the source of that evidence." Id., 44 n.4. The present case is distinguishable because, unlike in *Steve*, there was no bill of particulars that limited the state's theory.

In *State* v. *Faulkner*, 48 Conn. App. 275, 277–78, 709 A.2d 36 (1998), we reiterated the controlling law concerning principal and accessory liability: " 'The fact that a defendant is not formally charged as an accessory pursuant to General Statutes § 53a-8 does not preclude a conviction as such.' *State* v. *Correa*, 241 Conn. 322, 340, 696 A.2d 944 (1997). In Connecticut, there is no practical significance to being labeled as a principal or as an accessory. Id., 340. 'The accessory statute merely provides alternate means by which a substantive crime may be committed.' . . . Id., 341." *State* v. *Faulkner*, supra, 278.

We note that, at the habeas hearing, Koch conceded that the instruction on accessorial liability was appropriate.[7] Moreover, the evidence that led to the trial court's instruction on accessorial liability was brought out by the defendant's cross-examination of several of the state's witnesses. The trial court's instruction on accessorial liability was properly given to the jury on the basis of the evidence adduced by the petitioner during the course of trial. Because the petitioner has failed to establish that the instruction was improperly given or that he was prejudiced by the presence of the accessorial liability instruction, we cannot conclude that there is any probability that the petitioner is burdened by an unreliable conviction.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] The trial court instructed the jury on the basis that the defendant, if anything, was a principal. Upon requests by the jury, the court then charged that the defendant would also be guilty of both offenses if he had intentionally aided another for the purpose of committing those crimes. The defendant preserved this as an appellate issue.