[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, David Cholewinski, pursuant to General Statutes § 52-466 and article 1, section 8 of the Connecticut constitution, has filed a petition with this court for a writ of habeas corpus. In his petition he claims that he received ineffective assistance of counsel from his trial attorney John Gulash.
 I
The petitioner was convicted of multiple cases by way of pleas of guilty in the Superior Court at Derby on August 26, 1996. At a sentencing hearing on November 14, 1996, this petitioner received a total effective sentence of ten years to CT Page 9428 serve.
The petitioner claims in his petition the following:
 The petitioner's sentence was the result of ineffective assistance of counsel, which violated the petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution, in that: (i) no attorney of minimal competence in the criminal law would have waived a conflict of interest of the type set forth above and under the circumstances presented by this case; (ii) no attorney of minimal competence in the criminal law would have purported to waive so serious a conflict of interest as that presented by this case without consulting with his client; and (iii) such unwaived conflict of interest probably affected the length of the petitioner's sentence.
In connection with Mr. Cholewinski's petition for a writ of habeas corpus, a hearing was held before the court on July 14, 1999. At the trial, Mr. Cholewinski testified as did his trial attorney John Gulash. The petitioner also presented the testimony of Attorney David Bachman, who has a law office in New Haven.
 II
In a habeas corpus proceeding the burden of establishing grounds for relief rest with the petitioner. Biggs v. Warden,26 Conn. App. 52, 55, 597 A.2d 839, cert. denied, 221 Conn. 902,600 A.2d 1029 (1991). The proper method for asserting a claim of ineffective assistance of counsel is by way of a motion for a writ of habeas corpus. State v. Leecan, supra, 198 Conn. 541-42;Lozda v. Warden, 223 Conn. 834, 613 A.2d 818 (1992). Connecticut follows the two-pronged test for evaluating the performance of trial counsel found in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Nieves v.Commissioner, 51 Conn. App. 615 ___ A.2d ___ (1999). "[T]he defendant must establish not only that his counsel's performancewas deficient, but that as a result thereof he suffered actualprejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." (Emphasis added.) Id., 620. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable." Fair v.Warden, 211 Conn. 398, 402, 559 A.2d 1094, cert. denied, CT Page 9429493 U.S. 981, 110 S.Ct. 512, 108 L.Ed.2d 574 (1989). Stated another way, the "petitioner must make a two-fold showing: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial." (Citations omitted.) Valeriano v. Bronson, 209 Conn. 75, 85-86,546 A.2d 1380 (1988); accord Mozell v. Commissioner, 51 Conn. App. 818,820, ___ A.2d ___ (1999).
"In reviewing the claim, this court must indulge a strong presumption that counsel's conduct falls within the wide range or reasonable professional assistance; that is, the defendant must overcome the presumption that, under these circumstances the challenged action might be considered sound trial strategy. In assessing the petitioner's claim, this court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Internal citations and quotations omitted.) Magnotti v.Meachum, 22 Conn. App. 669, 674-675, 579 A.2d 553 (1990). "[I]t is perfectly consistent for even a lawyer who commits a grievous error — whether due to negligence or ignorance — to be deemed to have provided competent representation" Wainwright v. Sykes,443 U.S. 72, 105, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), cited inValeriano v. Bronson, supra, 209 Conn. 87.
 III
The petitioner's claim arises out of the fact that on August 26, 1996, the judge sitting in the Derby Court, disclosed that he knew two of the people involved in the charges against the petitioner and that his trial attorney did not seek to have the judge disqualified.
The transcript of the proceedings in the Derby Court on August 26, 1996, on this issue, are as follows: (p. 9-10)
 The Court: Before we go any further, let me point out to everyone that Sue Beach, maiden name of Sue Walsh, she and I were classmates in Shelton High School together. Her husband is Gene Beach, who was for several years president of the Harry B. Bronson Country Club in the Huntington section CT Page 9430 of Shelton, and during his term as president, I was counsel to the club. So let me make that disclosure now, and if anyone want to move . . . I don't feel I'm disqualified because I don't have any problem dealing with these cases and ignoring those relationships, but I feel compelled to point it out to everyone, and if anyone want to disqualify me on that account, I'd be happy to disqualify myself.
 Mr. Kennedy: I do not wish to disqualify you your Honor. You've disclosed everything in chambers. As to the case, we've had full discussion, we had full agreement. I have full faith in your Honor. I'm very much satisfied the way things are.
The Court: Very well.
 Mr. Gulash: Your Honor, I'd make a similar representation. I appreciate the disclosure your Honor, but I'm not moving for the Court to be disqualified.
And at page 31:
 The Court: As I understand the plea bargain here, it is that I will sentence you to a term of not greater than 10 years in prison, but that your attorney has the right to argue for a sentence of less than 10 years, and I will liven attentively and consider all his arguments on your behalf before I impose sentence, and that we will order a pre sentence investigation, the results of which I will also take into consideration at the time of sentencing. Is that your understanding of the plea bargain sir?
Mr. Cholewinski: Yes your Honor.
 The Court: Now, other then that, have any promises been made . . . Do you want to take a few minutes here?
Mr. Gulash: He's okay your honor.
CT Page 9431 What antedated the proceedings in court on August 26, 1996 was the fact that Attorney Gulash was representing Mr. Cholewinski wherein Mr. Cholewinski was charged with seventeen criminal offenses including a violation of probation.
Attorney Gulash had been negotiating with the prosecutor for a disposition of the cases. The negotiations led to a supervised pretrial with Judge Sylvester. It was at the in-chambers pretrial discussions that Judge Sylvester disclosed his knowledge of Susan and Gene Beach, who were victims in one of the criminal charges.
As a result of the supervised pretrial Mr. Cholewinski was offered a sentence of no more than ten years to serve with a right to argue for less and this proposal was acceptable to Mr. Cholewinski.
The petitioner alleges that his attorney never informed him of the disclosed relationship prior to August 26, 1996, even though he discussed his plea with the attorney in his office, about two weeks before. When the disclosure was made on the record on August 26, 1996 when the pleas were entered the plaintiff claims he was told by his attorney to "let it go", that it would not matter in that another judge would give the same sentence that Judge Sylvester would give. Also that he could receive a more severe sentence if a trial took place.
Mr. Cholewinski stated he recalls Judge Sylvester saying that he would entertain a request for disqualification on August 26, 1996, but left this matter up to his attorney because he trusted his judgment. Mr. Cholewinski took the advice of his attorney and did not question or contradict him on this issue.
Attorney Gulash was a public defender for five years and has been in private practice for eighteen years and that about 95% of his practice is in criminal law. He indicated that he has had over 100 jury trials and has handled appeals.
Attorney Gulash stated that prior to August 26, 1996 and on that date he informed Mr. Cholewinski of the relationship of Judge Sylvester with two of the victims. That Attorney Gulash recommended to Mr. Cholewinski not to have the judge disqualified and his client agreed.
Attorney Gulash had appeared in front of Judge Sylvester before, he had represented other clients as to pleas and CT Page 9432 sentencings before said judge. Attorney Gulash testified that Judge Sylvester stated that he didn't think the relationship was a "big deal". Attorney Gulash felt that he had a meaningful right to argue for less and he also felt that his client would be better off with Judge Sylvester than another judge.
A pre sentence investigation was ordered. Mr. Cholewinski met with the probation officer who conducted a thorough investigation on his behalf. As a result the probation officer rendered a comprehensive report which concluded by recommending a "split sentence", which is incarceration to be suspended after a period of time with a probation period.
The pre sentence report was before Judge Sylvester at the date of sentencing which was November 14, 1996.
At the sentencing hearing on November 14, 1996, there appeared two victims, a Pamela Grabowski and Marie Roy who addressed the court. Marie Roy, who was a victim of a residential burglary, gave particularly dramatic testimony.
Ms. Roy gave the following testimony: (p. 4-5)
 Ms. Roy: Well, like I said earlier, it's the way they went about it. They cut me of from all the outside world. We were in bed sleeping, I knew they were in my house. I did not know how to handle it. I was petrified. They disconnected the phone, the electricity.
 Ms. Roy: They robbed me of my security, I had no contact, whatsoever with the outside world and they gave no consideration for that. My husband has a heart condition that is one of the reasons why I did not wake him. I didn't know what we would be up against. I had my daughter home from college, I was thinking of her, and they robbed me of my security while we were sleeping. To lay there in bed knowing what was going on. I have recurring dreams to this day of my electricity being out and someone's in the house. It's the same thing over and over again! I don't know when that will ever cease, and it's scary, it really is scary and I have been through depression myself many times. I'm fine now but it's just the way they went about it and that they were already on CT Page 9433 probation, and I said I was a very forgiving person if it was their first offense. Everyone is entitled to a mistake I think, that is my personal opinion. Plus, I did have insurance, but we're still out like five hundred dollars ($500.00) because we have to meet our deductible. So I mean, we went through all this and it's still costing me money. But that's minor compared to everything else, like I said, how they went about it. It still lives with me today and my daughter.
At the conclusion of the sentencing hearing, Judge Sylvester imposed a sentence of ten years to serve.
This decision is not whether or not Judge Sylvester had a conflict or whether or not he should have recused himself. It is noted that the relationship with Sue Beach, was that she was a high school classmate about fifty years ago. And as to Gene Beach, her husband, he was president of a country club, that Judge Sylvester represented when he was in private practice in the 1970s. There was no indication of any ongoing relationship with the Beaches.
What is apparent is that Attorney Gulash made a tactical and professional judgment call that it was in his clients best interests to accept the plea agreement and proceed with the sentencing before Judge Sylvester. Although Attorney Bachman felt Attorney Gulash's actions were below the applicable standard, the court sees this as "Monday morning quarterbacking" and cannot credit this testimony as establishing that Attorney Gulash's conduct fell below the standard. Mr. Bachman may have made a different tactical move, but that does not mean that Attorney Gulash's representation was deficient. Attorney Gulash was present and intimately aware of the nature and circumstance inherent in the cases involving Mr. Cholewinski.
Attorney Gulash practiced in the Derby Court and had been before Judge Sylvester on prior occasions. He was aware of the relevant circumstances in the plea negotiations and resolution of Mr. Cholewinski's criminal cases. He felt the case had to be resolved byway of a plea, because a trial was not a favorable option because his client made confessions as to some of the charges. Also because guilty findings on the charges could have resulted in a sentence of 64 years 9 months or 72 years 3 months, depending on the calculations. CT Page 9434
Also, as to whether to seek the disqualification of Judge Sylvester, Attorney Gulash felt that the relationships indicated by the judge were remote and would not be harmful in the resolution of the case. Attorney Gulash believed Judge Sylvester when he said that he could ignore the relationship with the Beaches and deal with the cases.
Attorney Gulash felt that based on all the circumstances, it was in his client's best interest to have the cases resolved before Judge Sylvester. He was not alone in this conclusion in that Attorney Kennedy, who represented a co-defendant, also agreed to have his case proceed before Judge Sylvester.
The court finds that Attorney Gulash advised Mr. Cholewinski of Judge Sylvester's relationship with two of the victims and that said information was given to the petitioner before August 26, 1996 and also on that date.
While the final result was not what Mr. Cholewinski or his attorney wanted, disappointing results do not necessarily equate with deficient representation.
Further, even assuming arguendo, that deficient representation could have been established, it is pure speculation that the sentencing outcome would have been different with another judge given all the circumstances in the charges against Mr. Cholewinski.
The court finds that defense counsel's declination to disqualify Judge Sylvester did not constitute ineffective assistance of counsel and that counsel's performance was not so deficient as to deprive the petitioner his constitutional right to effective assistance of counsel.
The petitioner has not met his burden of proof that he was denied effective assistance of counsel or that the waived alleged conflict of interest affected his sentence.
The court is satisfied that the proceedings involving the sentencing of Mr. Cholewinski came within the principles of fundamental fairness.
For all the foregoing reasons the petition is hereby dismissed.
Stengel, J. CT Page 9435