[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The petitioner, Frank Vandever, pursuant to General Statutes § 52-466 and article 1, section 8 of the Connecticut constitution, has filed a petition with this court for a writ or habeas corpus. In his petition he claims that he received ineffective assistance of counsel. In his Amended Petition, the petitioner states that he was represented in his criminal case by Attorney Fred DiCaprio. He alleges the following in said petition:
 Attorney DiCaprio's performance fell below the ordinary skill expected from attorneys practicing criminal law, which resulted in the convictions of Mr. Vandever in violation of his due process right to the effective assistance of counsel as guaranteed by the U.S. and Connecticut constitutions. In particular, Mr. DiCaprio's failures included the following:
a. failed to properly investigate case; and
 b. failure to properly advise the petitioner with respect to plea entered, which resulted in the aforementioned convictions.
 But for the actions and inactions of counsel for the petitioner, in the above referenced matter, it is reasonably probable that the outcome of the proceedings would have been different in that:
 a. The petitioner would not have pled to the above referenced crimes; and
b. The petitioner would not have been awarded the above
CT Page 11537 referenced sentence.
The petitioner entered guilty pleas before Hon. Thomas Miano on August 2, 1994 as to the following charges: Two Counts of Kidnaping in the First Degree in violation of Connecticut General Statutes § 53a-92 (a)2b; One Count of Robbery in the First Degree in violation of Connecticut General Statutes § 53 a-134(a)(3); One Count of Burglary in the First Degree in violation of Connecticut General Statutes § 53a-101(a)(1); and One Count of Conspiracy to Commit Kidnaping in the First Degree in violation of Connecticut General Statutes § 53a-48 (a) by 53a-92 (a)(2)(b). On that same day, Judge Miano, sentenced the petitioner to a total effective sentence of fifteen (15) years to be served consecutively to any sentence the petitioner was serving at the time.
At the hearing held July 30, 1999, the only evidence presented was the testimony of Frank Vandever, exhibit A (transcript of the plea and sentencing before Judge Miano) and exhibit B (a confession signed by Frank Vandever), Attorney DiCaprio was not called as a witness.
Mr. Vandever claimed that his attorney did not make an investigation into his case, that he had only minimal contact with his attorney and that he was not guilty of the charges to which he pleaded guilty. However, at the time of the alleged crimes, Mr. Vandever was incarcerated and he was arrested in New Jersey. At the hearing, Mr. Vandever claims amnesia to these facts.
 II
In a habeas corpus proceeding the burden of establishing grounds for relief rest with the petitioner. Biags v. Warden,26 Conn. App. 52, 55, 597 A.2d 839, cert. denied, 221 Conn. 902,600 A.2d 1029 (1991). The proper method for asserting a claim of ineffective assistance of counsel is by way of a motion for a writ of habeas corpus. State v. Leecan, supra, 198 Conn. 541-42;Lozada v. Warden, 223 Conn. 834, 613 A.2d 818 (1992). Connecticut follows the two-pronged test for evaluating the performance of trial counsel found in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Nieves v.Commissioner, 51 Conn. App. 615, ___ A.2d ___ (1999). "[T]he defendant must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actualCT Page 11538prejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." (Emphasis added.) Id., 620. "Unless a defendant makes both showings, it cannot be said that the conviction, resulted from a breakdown of the adversary process that renders the result unreliable." Fair v. Warden,211 Conn. 398, 402, 559 A.2d 1094, cert. denied, 493 U.S. 981,110 S.Ct. 512, 108 L.Ed.2d 574 (1989). Stated another way, the "petitioner must make a two-fold showing: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial." (Citations omitted).Valeriano v. Bronson, 209 Conn. 75, 85-86, 546 A.2d 1380 (1988); accord Mozell v. Commissioner, 51 Conn. App. 818, 820, ___ A.2d ___ (1999).
"In reviewing the claim, this court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under these circumstances, the challenged action might be considered sound trial strategy. In assessing the petitioner's claim, this court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Internal citations and quotations omitted.) Magnotti v.Meachum, 22 Conn. App. 669, 674-675, 579 A.2d 553 (1990). "[I]t is perfectly consistent for even a lawyer who commits a grievous error — whether due to negligence of ignorance — to be deemed to have provided competent representation." Wainwright v. Sykes,433 U.S. 72, 105, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), cited inValeriano v. Bronson, supra, 209 Conn. 87.
 III
Petitioner's exhibit A belies much of the assertions that the petitioner now makes as to his plea and sentencing on August 2, 1994.
Pages four, five, six and seven of said transcript indicates the following: CT Page 11539
THE COURT: Now, sir, by pleading guilty to each of these charges, these are the rights you are giving up as to each charge — I'm not going to repeat them all five or six times. You're giving up these rights as to.each charge. You are giving up your right to having a trial before either a judge or a jury. You are giving up you right to having the State prove your guilt beyond a reasonable doubt in each of these cases. You're giving up your right to having the witnesses against you come into court and your confronting them and seeing them and facing them in court. You are giving up your right to having the witnesses against you come into court and you or your lawyer, on your behalf, questioning those witnesses and cross-examining them. You are giving up your right to remain silent. You're giving up your right not to say anything against yourself And you're giving up your right to put forward whatever defense you might have to these charges. Do you understand those things that you are forever giving up if I accept these pleas? Do you understand that?
THE DEFENDANT: Absolutely.
THE COURT: All right. Now, sir, are you on probation or parole right now anywhere in the world?
THE DEFENDANT: No, sir.
THE COURT: Are you under the influence of any alcohol or drugs right now?
THE DEFENDANT: No, sir.
THE COURT: You do not appear to be. Have you discussed your pleas of guilty to these charges and the consequences of those pleas with your attorney, Attorney DeCaprio?
THE DEFENDANT: More than enough.
THE COURT: All right. And has Mr. DeCaprio explained to you what the elements of each crime is so —
THE DEFENDANT: Yes, sir.
THE COURT: — that that's what the State would have to prove in order to convict you of each crime? Has he gone over that with you? CT Page 11540
THE DEFENDANT: Yes, sir.
THE COURT: Okay. Are you satisfied with the advice that Attorney DeCaprio has given you, sir?
THE DEFENDANT: More than satisfied.
THE COURT: Very good. Now, there a Court-indicated sentence here. And I indicated — I think it was back in October and I reiterated this yesterday — I indicated to Mr. DeCaprio and the State's Attorney that the Court would impose a fifteen — a flat fifteen-year sentence and I believe that's an agreed-upon sentence for you to serve consecutive — consecutive — to any sentence you're presently serving. Do you understand what all that means?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand what consecutive means?
THE DEFENDANT: Absolutely.
THE COURT: What's it mean?
THE DEFENDANT: It means in addition to.
THE COURT: You're right. Okay. Now, there has been some question. I told Mr. — just so everything's on the up and up — I told Mr. Rutan and his attorney that he had a right to argue for less but I also told them the fifteen years consecutive. But I also told Mr. Rutan not to be optimistic. That in all likelihood, he would receive the same fifteen-year sentence and the reason, it's been represented to me that the alleged culpability here is the same for you and Mr. Rutan. The reason why I made a distinction — and I try to be as fair as I can when sentencing any individual — is based on my understanding of the prior record that each of you gentlemen bring to the table today. It's my opinion, based on my being aware that you have been convicted of the crime of murder that I think that brings to the table a little more aggravating record. Do you follow me?
THE DEFENDANT: Absolutely.
THE COURT: All right. So, Ijust want my reason to be clear on CT Page 11541 why there's a disparity, if there is any.
THE DEFENDANT: No, sir. It's absolutely fair.
As to the petitioner's culpability in the charges against him, pages fourteen and fifteen of the transcript indicate the following:
THE COURT: Okay. Now, you tell me, sir, what you did on January 1st, `92 — at 103 Phoenix Avenue in Enfield. You tell me, sir, what you did. Truthfully.
THE DEFENDANT: Well, we entered the building and, you know, we — to wait out the night, you know, in order to effect our escape. And then the next morning, the Nolans had come in and we confronted them and said either give us their truck or we will harm you and we took their truck and we left.
THE COURT: Okay. Where they tied up in any way?
THE DEFENDANT: Oh, I'm sorry. Yes, sir, we tied them up.
THE COURT: You both tied them up?
THE DEFENDANT: Yes, sir. Well, he did. I didn't but I agreed.
THE COURT: One of you was holding the dangerous instrument and the other was tying them up?
THE DEFENDANT: No, we just didn't — no, the instrument was put down. We just simply tied them up.
THE COURT; All right.
THE DEFENDANT: I mean, the newspapers did a wonderful job of making us sound like Charlie Manson, Jr. So, they — that was enough fear right there.
THE COURT: All right. And is it fair to say that the keys to the Jeep — was it a jeep?
MS. ALEXANDER: Yes, it was.
THE COURT: Were taken by threat of force from the Nolans? CT Page 11542
THE DEFENDANT: Yes, sir. Oh, absolutely.
THE COURT: And that's the robbery. You understand? The —
THE DEFENDANT: Yes, sir.
THE COURT: — larceny of any items you have with the threat of force is the robbery and taking their keys and the vehicle is the robbery. Do you understand that?
THE DEFENDANT: Right. Yes, sir.
In view of the extensive canvas engaged by the court at the plea and sentencing, and the petitioner's responses thereto, it is difficult to give credence to the claims that he now makes.
The petitioner presented no credible evidence that his counsel's performance fell below the required standard of reasonable competence displayed by lawyers with ordinary training and skill in criminal law.
Therefore, the court must conclude that the petitioner has failed to meet his burden of establishing the allegations in his amended petition.
Accordingly, the petition is dismissed.
STENGEL, J.