LEEROY HARRIS *v.* COMMISSIONER
OF CORRECTION
(AC 32093)

Gruendel, Beach and West, Js.

Argued October 11, 2011—officially released March 6, 2012

Michael Zariphes, special public defender, for the appellant (petitioner).

Susann E. Gill, supervisory assistant state's attorney, with whom, on the brief, were John C. Smriga, state's attorney, and Gerard P. Eisenman, senior assistant state's attorney, for the appellee (respondent).

### Opinion

WEST, J. The petitioner, Leeroy Harris, appeals following the habeas court's denial of his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly rejected his actual innocence and ineffective assistance of counsel claims. We affirm the judgment of the habeas court.

The relevant facts and procedural history related to the underlying conviction were set forth by this court in a decision affirming the petitioner's conviction; see State v. Harris, 48 Conn. App. 717, 711 A.2d 769, cert. denied, 245 Conn. 922, 717 A.2d 238 (1998); and in the habeas court's memorandum of decision. "The jury reasonably could have found the following facts. On May 14, 1994, Carl Nicholson left his home on Arctic Street in Bridgeport to buy groceries. He lived there with Stacy Corbett and [her] five children, Erica, Eric, Shawn, Corey and Carla. When he left, he told ten year old Erica, the eldest child, to close the door. As he stepped out onto the porch, Nicholson had a conversation with the [petitioner], whom he knew as a neighbor, telling him that Corbett had left the children alone for two days and that he was going to the grocery store. The [petitioner] told Nicholson that he had some toys in the attic for the children and Nicholson replied that the [petitioner] should save the toys for the morning

because the children were going to bed. The [petitioner] asserted that he was going to get the toys for the children.

"Shortly thereafter, the [petitioner] appeared at the door of the Corbett residence and told Erica that her father said to come with him to get some toys. Eric, who recognized the [petitioner], wanted to go along, but the [petitioner] said, '[o]nly Erica.' Erica left with the [petitioner], who beat and choked her, carried her through an alleyway, threw her over a fence into her backyard, where he stabbed her in the face and neck, piercing her jugular vein and causing her death. The [petitioner] then went to the one of the victim's neighbors and told them there was a body in the backyard." Id., 718–19.

The petitioner was charged with murder in violation of General Statutes § 53a-54a. Subsequently, the petitioner was convicted following a jury trial and was sentenced to sixty years imprisonment. This court affirmed the petitioner's conviction on direct appeal. Id., 731.

The petitioner filed an amended four count petition for a writ of habeas corpus on September 21, 2009. Following a habeas trial, the court denied the petition for a writ of habeas corpus. The court granted the petitioner's petition for certification to appeal. On appeal, the petitioner asserts that the court improperly rejected his actual innocence claim and abused its discretion by drawing an adverse inference regarding the petitioner's failure to undergo a DNA test, without first providing notice of such an inference. Additionally, the petitioner alleges that the court improperly rejected his claim of ineffective assistance of counsel regarding his trial counsel's failure to present an expert witness to evaluate the reliability of a child witness' testimony. This

appeal followed. Additional facts will be set forth as necessary.

I

We first address the petitioner's claim that the court improperly rejected his actual innocence claim. In count one of his amended petition for a writ of habeas corpus, the petitioner alleges actual innocence due to new DNA tests conducted on his shoes that excluded the victim's blood as a source contributer to the stains found on the petitioner's shoes. The petitioner alleges that because the shoes were the only physical evidence linking him to the crime, the new test results undermine the state's entire case. At the habeas trial, a forensic expert testified that those stains on the petitioner's shoe which had been admitted at his criminal trial as evidence of the victim's blood when retested in 2009 provided only a weak positive result for blood and eliminated the victim as a possible contributor. The forensic examiner was then asked on cross-examination whether she had conducted any other DNA testing from any other evidence from the murder.[1] The forensic examiner testified that she had also tested fingernail scrapings from the victim which were able to generate partial DNA profiles, but the request for a comparison DNA sample from the petitioner was never provided. Therefore, the fingernail scraping tests did not conclusively exculpate or inculpate the petitioner.

In a memorandum of decision, the court rejected the petitioner's actual innocence claim. The court was not persuaded by the petitioner's argument that without the blood evidence on the petitioner's shoes, the jury would have acquitted the petitioner. The court found that such an argument "overlooks the fact that [the petitioner] was identified as the person who was last

---

[1] The petitioner objected to the question as irrelevant, but the court overruled the objection.

seen with the victim and inexplicably reported her body in the backyard. [The petitioner] also related a confrontation he allegedly invented wherein a white male and a black female fought and the male threw the female over the fence. . . . His behavior at the crime scene, his knowledge that the victim was stabbed, and his leaving the scene to change his clothes represent further circumstantial evidence . . . ." In the last section of the memorandum of decision, the court drew an adverse inference from the petitioner's failure to provide a DNA sample to compare with the DNA tested from the victim's fingernail scrapings, inferring that any further DNA testing would not have been exculpatory.

The petitioner now claims that the court erred in denying his petition for a writ of habeas corpus on the basis of actual innocence. Within his claim of actual innocence, the petitioner makes subordinate claims that the court (1) improperly overruled his scope and relevancy objections with regard to DNA testing of fingernail scrapings and (2) abused its discretion and violated the petitioner's constitutional rights by drawing an adverse inference from his failure to provide a DNA sample. We disagree.

A

We begin by reviewing the court's rejection of the petitioner's claim of actual innocence. "[T]he proper standard for evaluating a freestanding claim of actual innocence . . . is twofold. First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would

find the petitioner guilty of the crime." *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 747, 700 A.2d 1108 (1997). As to the clear and convincing evidence component, "[t]he clear and convincing standard of proof is substantially greater than the usual civil standard of a preponderance of the evidence, but less than the highest legal standard of proof beyond a reasonable doubt. It is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . We have stated that the clear and convincing standard should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory." (Internal quotation marks omitted.) *In re Dylan C.*, 126 Conn. App. 71, 87, 10 A.3d 100 (2011).

Our Supreme Court recently clarified the actual innocence standard in *Gould* v. *Commissioner of Correction*, 301 Conn. 544, 22 A.3d 1196 (2011). In *Gould*, the habeas court found that the petitioner was entitled to relief on his actual innocence claim after the "recantations of testimony that was the sole evidence of [the petitioner's] guilt." Id., 546. On appeal, our Supreme Court held that the clear and convincing burden under *Miller* requires more than casting doubt on evidence presented at trial and the burden requires the petitioner to demonstrate actual innocence through affirmative evidence that the petitioner did not commit the crime. Id., 562. "Recantations of inculpatory criminal trial testimony undoubtedly are relevant to a determination of actual innocence. But evidence of that nature must be accompanied by *affirmative* evidence of innocence to meet *Miller*'s standard of clear and convincing evidence of actual innocence." (Emphasis in original.) Id., 564.

Under the second prong, the petitioner must establish that "no reasonable fact finder, considering all of the evidence in the same way that the habeas court considered it, and drawing the same inferences that the habeas court drew, would find the petitioner guilty of the crime of which he stands convicted." *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 800.

The standard of review for actual innocence is twofold. "With respect to the first component of the petitioner's burden, namely, the factual finding of actual innocence by clear and convincing evidence . . . [t]he appropriate scope of review is whether, after an independent and scrupulous examination of the entire record, we are convinced that the finding of the habeas court that the petitioner is actually innocent is supported by substantial evidence. This is the same scope of review that we apply to the ultimate finding by a trial court regarding whether a confession in a criminal case is voluntary. . . . The weight of the interests at stake in the factual determination by the habeas court in the present case compels the same heightened level of scrutiny." (Citation omitted.) Id., 803. As to the second component of the petitioner's burden, "that no reasonable fact finder would find the petitioner guilty . . . our scope of review is plenary. A habeas court is no better equipped than we are to make the probabilistic determination of whether, considering the evidence as the habeas court did, no reasonable fact finder would find the petitioner guilty. That type of determination does not depend on assessments of credibility of witnesses or of the inferences that are the most appropriate to be drawn from a body of evidence—assessments that are quintessentially [the] task for the [fact finder] in a habeas proceeding. . . . Determining whether no reasonable fact finder, considering the entire body of evidence as the habeas court did, would find the petitioner guilty is either an application of law to the facts

or a mixed question of law and fact to which a plenary standard of review applies." (Citation omitted.) Id., 805.

The petitioner argues that the newly retested shoes were the only physical evidence that connected him with the crime and that the rest of the state's evidence was circumstantial. The petitioner asserts that without any physical evidence, the state's weak circumstantial case has been shattered and thus the court erred in rejecting his actual innocence claim. The petitioner then attempts to refute all of the circumstantial evidence that the state used to convict him.

The petitioner has demonstrated that his shoes, when retested, did not contain blood from the victim, and he attempts to use this discounted physical evidence to refute the rest of the circumstantial evidence relied on by the jury to convict him. The petitioner has not presented any *affirmative* proof of actual innocence, and there was considerable circumstantial evidence that the petitioner committed the crime. Based on our own review, we conclude that the court properly found that the petitioner had not established by clear and convincing evidence that he is innocent of the murder for which he was convicted, nor had he established that no reasonable fact finder would find him guilty of the crime.

B

Next, the petitioner argues that the court abused its discretion when it overruled his objections regarding additional DNA testing done by the state forensic science laboratory (laboratory) on the fingernail scrapings. During the cross-examination of the forensic examiner the respondent, the commissioner of correction, asked the examiner if the laboratory conducted DNA testing on evidence other than the petitioner's shoes. The petitioner objected to questions regarding

further DNA testing of the fingernail scrapings as irrelevant and beyond the scope of the petitioner's petition. The court admitted the testimony finding that it was relevant to the issue of actual innocence.

We begin our legal analysis by noting that "[r]elevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice . . . ." Conn. Code Evid. § 4-3. "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Collins*, 299 Conn. 567, 582, 10 A.3d 1005, cert. denied, U.S. , 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011).

For a claim of actual innocence, any possible exculpatory evidence is relevant, even if it is not conclusive. Additionally, the testimony in question is relevant because the petitioner is seeking relief for actual innocence but did not submit a DNA sample for comparison with the fingernail scrapings. This failure to submit to a possible exculpatory test when claiming actual innocence is relevant testimony. For those reasons, we conclude that the court did not abuse its discretion by allowing testimony regarding further DNA testing that was conducted by the laboratory.

C

Additionally, the petitioner argues that the court abused its discretion and violated his constitutional rights by drawing an adverse inference, without prior notice, from the petitioner's failure to supply a DNA sample to the laboratory following its request.

The court based its decision rejecting the petitioner's actual innocence claim on the weight of the other evidence that was presented during the petitioner's criminal trial in the first section of its memorandum of

decision. It is not until the last paragraph of the last section of the memorandum of decision that the court addresses the "additional issue" of the " 'fallout' " from the retesting of DNA evidence. It is in this final section that the court makes its adverse inference from the petitioner's failure to supply a DNA sample. The court concluded that the petitioner's failure to give a DNA sample "would appear to negate by itself any actual innocence claim." After reviewing the memorandum of decision as a whole, we interpret this "additional issue," and the adverse inference that the court drew, to be a separate and independent ground that followed a thorough analysis on which the court had already rejected the petitioner's actual innocence claim. Because we interpret the adverse inference to be a separate ground on which the court denied the petition, we need not reach the merits of the petitioner's argument that the adverse inference and lack of notice violates his constitutional rights. See, e.g., *State* v. *Mark R.*, 300 Conn. 590, 598, 17 A.3d 1 (2011) ("It is well established that [w]here the trial court reaches a correct decision but on [alternate] grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . [W]e . . . may affirm the court's judgment on a dispositive alternate ground for which there is support in the trial court record." [Internal quotation marks omitted.]).

## II

Next, we address the petitioner's claim that the court improperly rejected his claim of ineffective assistance of counsel. Specifically, the petitioner argues that his counsel's failure to call an expert witness following the in-court identification of the petitioner by the victim's brother constituted deficient performance and prejudiced the outcome of the petitioner's criminal trial.

The following additional facts are necessary to resolve the petitioner's claim. The victim's brother, Eric,

was seven years old at the time of the victim's murder and eight years old at the time of trial. During his testimony at the probable cause hearing, the petitioner's attorney, David Abbamonte, took exception to the court's determination that Eric was a competent witness. At the probable cause hearing, Eric did not make a definitive identification of the petitioner. At the petitioner's criminal trial, the petitioner's counsel, William Holden, objected to the court's determination that Eric was competent to testify as a witness. During his testimony at trial, Eric identified the petitioner as the man who walked away with the victim on the night of her murder.

Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citation omitted; internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 80 Conn. App. 499, 503, 835 A.2d 1036 (2003), cert. denied, 267 Conn. 918, 841 A.2d 1190 (2004).

"In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that

the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Nieves* v. *Commissioner of Correction*, 92 Conn. App. 534, 536, 885 A.2d 1268 (2005), cert. denied, 277 Conn. 903, 891 A.2d 2 (2006).

"The first part of the *Strickland* analysis requires the petitioner to establish that . . . counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks omitted.) *Bova* v. *Commissioner of Correction*, 95 Conn. App. 129, 135, 894 A.2d 1067, cert. denied, 278 Conn. 920, 901 A.2d 43 (2006). "Turning to the prejudice component of the *Strickland* test, [i]t is not enough for the [petitioner] to show that the errors [made by counsel] had some conceivable effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) Id.

"In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort

be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 425, 876 A.2d 1277, cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005), cert. denied sub nom. *Santiago* v. *Lantz*, 547 U.S. 1007, 126 S. Ct. 1472, 164 L. Ed. 2d 254 (2006).

In the present case, the petitioner claims that Holden's failure to call an expert witness following Eric's testimony constituted deficient performance and prejudiced the petitioner. Specifically, the petitioner claims that if Holden had hired or consulted with an expert witness in child competence, Holden would have more effectively cross-examined Eric at trial, and the testimony of an expert witness would have alerted the jury to the problems of unreliability of child testimony. "[T]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Eastwood* v. *Commissioner of Correction*, 114 Conn. App. 471, 481, 969 A.2d 860, cert. denied, 292 Conn. 918, 973 A.2d 1275 (2009); see also *Nieves* v. *Commissioner of Correction*, 51 Conn. App. 615, 622–24, 724 A.2d 508, cert. denied, 248 Conn. 905, 731 A.2d 309 (1999) (holding

that petitioner's failure to present evidence showing what witnesses who were not called by petitioner would have said if called to testify was fatal to his claim).

The petitioner is merely speculating that an expert witness could have discounted the credibility of Eric's in-court identification. On two occasions, the court found Eric competent to testify, both at the probable cause hearing and at the criminal trial. The court found that Holden provided "a spirited defense . . . addressing the competency of a child witness . . . ." The petitioner did not present any evidence that Holden's consultation with, or testimony of, an expert witness would have weakened Eric's testimony. "The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner." *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 175, 774 A.2d 148 (2001). Additionally, the petitioner did not present any evidence that a prudent attorney would have brought in an expert to impeach the testimony of a child witness. Therefore, the petitioner cannot succeed on either the performance or prejudice prong of the *Strickland* test.

The judgment is affirmed.

In this opinion the other judges concurred.